COMMONWEALTH *vs.* CONSTANTINE G. PAPPATHANOUS.

Suffolk.    October 20, 1926. — November 23, 1926.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Larceny. Bucketing. Evidence,* Presumptions and burden of proof.

At the trial of an indictment charging larceny of money, there was evidence for the Commonwealth, admitted without objection by the defendant, that the defendant, registered as a broker under St. 1924, c. 487, § 4, doing business under a name other than his own, falsely represented to the complaining witness that he was employed by a firm of the name under which he was registered which had a large office in New York, and procured money from the witness for marginal transactions in New York; that the money received by him had never been sent to New York but had been kept by him; that only a colorable office was maintained in New York; that the business was merely "bucketing"; that no purchases or sales of any stock had been made;

and that from start to finish the defendant had been engaged in a scheme to defraud the complainant. *Held,* that

(1) The charge in the indictment could be made out by proof of embezzlement, of obtaining the money by false pretences, or of larceny at common law by a trick or fraud such that no possession of the money had come to the defendant;

(2) A verdict of guilty was warranted.

INDICTMENT, found and returned on February 5, 1926, charging the defendant in two counts with the stealing from one William Gallagher of $350 on September 30, 1925, and $350 on October 20, 1925.

In the Superior Court, the indictment was tried before *Bishop,* J. Material evidence is stated in the opinion. At the close of the evidence, the defendant moved that a verdict of not guilty be ordered. The motion was denied. The defendant was found guilty and alleged exceptions.

*F. T. Leahy,* for the defendant.

*E. J. Harrigan,* Assistant District Attorney, for the Commonwealth.

WAIT, J. The only question presented by this bill of exceptions is the propriety of the refusal to direct a verdict of not guilty. The charge in each of the two counts is larceny of money in the amount and of the value of $350 of the property of one Gallagher. It could be made out by proof of embezzlement, of obtaining the money by false pretences, or of larceny at common law by a trick or fraud such that no possession of the money had come to the defendant. G. L. c. 266, § 30. *Commonwealth* v. *King,* 202 Mass. 379. No request for specifications was made.

The Commonwealth introduced evidence which would justify findings as follows: On September 30, 1925, in accord with an arrangement previously made between the complainant Gallagher and an employee of Arthurson and Company, the defendant called upon the complainant in Boston at the Noyes-Buick Company, where the latter was employed as a salesman of used cars. He told complainant "that his name was 'Papp'; that he was employed by Arthurson and Company, a firm of stockbrokers, who had a large office in New York; that connected with this office of Arthurson and Company in New York was a man who had

opportunities to get inside news on stock market movements and who was able to give good tips on the market; that Arthurson and Company had bought twenty shares of Hudson Motor Company stock for the witness in execution of an order given by the witness to another salesman of Arthurson and Company, and that he (the defendant) was there to collect the $350 check that the witness was to pay as margin on that purchase; . . . ."    The complainant said he would rather go down to the Arthurson office and give the check there, but defendant told him the check could be made payable to Arthurson and Company; that it would be sent to New York and a confirmation be sent to him from there. Complainant, thereupon, gave the defendant a check payable to the order of "Arthurson & Co." for $350, and received a receipt for $350, "on acct 20 Hudson Motors," which was signed "Arthurson & Co."    No confirmation came the next day.    After waiting for it in vain for two or three days more, the complainant went to 20 Kilby Street.    There he found a door with the name Arthurson and Company painted on it. He went into an outside waiting room and told the defendant, who soon after came from the inside room, that he had not received the promised confirmation from New York.    The defendant said he did not understand why it had not been received and he would communicate at once about it with New York.    A day or two later, having received no confirmation, the complainant again went to the office at 20 Kilby Street, found the defendant there and told him that he was still waiting for the confirmation notice.    The defendant at the moment was communicating by telephone and said that he was talking with the New York office of Arthurson and Company and would speak right away to New York about the confirmation.    Complainant heard him, purporting to talk to some one in New York, tell that person to send the complainant's confirmation at once. The complainant testified that the next day he received, in an envelope postmarked New York, a confirmation of a purchase for his account by Arthurson and Company of twenty-five shares of Hudson Motor stock (not twenty shares as ordered,) margined and receipted for.    The con-

firmation which was put in evidence and was in the common form of a broker's confirmation, shows a purchase of twenty shares at $95¾. It was dated September 30, 1925. The heading bore the address "Arthurson & Co." at 25 Beaver Street, New York and at 20 Kilby Street, Boston; telephone "Broad 4580-4581." It was signed "Arthurson & Co. Per L."

Thereafter the complainant visited the office at 20 Kilby Street several times and talked with defendant. Prices of the stock purchased were going higher daily on the New York exchange, and about the middle of October the complainant saw the defendant at the Kilby Street office, was congratulated by him on his profit and was told by him that he had another good tip, to buy Studebaker Motor Car Company stock, and that complainant ought to buy fifty shares. The defendant said he would buy the fifty shares for complainant's account if he would pay $350 more as additional margin. Complainant agreed and the next day received from New York a confirmation of a purchase of sixty shares of Studebaker stock at $63. This confirmation differed from the earlier one only in the description of the purchase in omitting "Arthurson & Co. 20 Kilby St. Boston, Mass."; in being signed "Arthurson & Co. Per L. J. Byrne"; and in the date, October 17, 1925. The complainant gave the defendant a check dated October 21, 1925, for $350, payable to the order of "Arthurson & Co." He went to the Kilby Street office and told defendant that he had bought fifty, not sixty shares. The defendant said the sixty was a mistake which he would correct.

From time to time the complainant visited the defendant at the Kilby Street office, and was congratulated on his profits. Both Hudson and Studebaker stocks were going up in price. About November 5, 1925, the defendant said complainant had made so much and his account was so strong that he could buy fifty more shares of Studebaker without paying additional margin. The complainant said: "All right, buy fifty more shares of Studebaker for me"; and, in a day or two, he received a confirmation from New York for a purchase of fifty shares of Studebaker at $65.35.

This was in the form of that of October 17, and like it except for the date "Nov. 7, 1925"; the description of the purchase and the signature "Arthurson & Co. Per L."

About November 10, prices for the stock began to fall. Complainant, fearing loss of his profits, went to the office in Boston and told the defendant that he wanted all his stocks sold. The defendant told him not to be frightened, the market reaction was temporary and his stocks would soon regain their high prices. Complainant said he wanted to sell and that the defendant should sell. Hearing nothing, he went again to the office and demanded that defendant sell the stocks and send a check for the balance. Defendant finally said he would sell the stocks and send the check to balance the account. Complainant never received a check from the defendant; but shortly before Thanksgiving he received from "Arthurson & Co." confirmations: one dated November 17, 1925, for a sale of twenty-five shares Hudson Motor Car Co. at $99⅞, and one dated November 18, 1925, for a sale of one hundred and ten shares Studebaker Corporation at $54¾. These confirmations were similar in form to the others save the signature which was "Arthurson & Co. Per     ."

Several months later, in the corridor of the Court House at Boston, complainant met the defendant and asked about the $700 which he had put in. The defendant told him to keep quiet, and that he would see to it that complainant got his money. No money was received by him. Complainant made complaint to the police shortly after Thanksgiving in 1925. The interview at the Court House was at a time when the complainant was threatening the defendant with arrest unless his $700 was returned.

There was evidence that about the middle of November, 1925, two witnesses visited New York, went to 25 Beaver Street, and there found, in a rear corridor of the building, a door bearing the name Arthurson and Company. Some time after 9:30 A.M. this door was opened by a young man. The witnesses followed him through it into a small outer office about eight feet by eight feet in size, and they looked into an inner office which was not a large room.

A copy of the certificate of registration of the defendant as a broker required by St. 1924, c. 487, § 4, was put in evidence. It showed an application by the defendant, Constantine G. Pappathanous, "doing business as Arthurson & Co." for a business to be conducted at 20 Kilby Street, Boston. It bore an indorsement "Cancelled by Commission, 2249, Dec. 15, 1925 D. P. U."

The check given by the complainant on September 30 bore indorsements indicating that it had been deposited with the State Street Trust Company in Boston and had been paid on October 5, by the Broadway National Bank, on which it was drawn. The check dated October 21 bore indorsements indicating that it had been deposited with The National Shawmut Bank of Boston on October 22, had passed to the Federal Reserve Bank of Boston, and had been paid on October 23 by the Broadway National Bank. There was no indication that they had been sent to New York unless the indorsement "Arthurson & Co." so implied.

No exception seems to have been taken to any of this evidence. At the close of the evidence for the prosecution, the defendant rested and moved that the jury be directed to return a verdict of not guilty. The motion was denied. No exception was claimed to the judge's charge. The evidence recited furnishes a basis for inferences that the defendant, who in obtaining his registration had described himself as "Arthurson & Co." was, in fact, the only Arthurson & Co.; that the money received by him had never been sent to New York but had been kept by him; that only a colorable office was maintained in New York; that the business was merely "bucketing"; that no purchases or sales of any stock had been made; and that from start to finish the defendant had been engaged in a scheme to defraud the complainant. If this were found to be the truth, the defendant could be found guilty of larceny at common law in the first transaction as well as in the second; for the original order to purchase the Hudson stock had been given to an employee of "Arthurson & Co.", that is, on this hypothesis, of the defendant. The proof is largely matter

of inference, but enough appears to remove it from the sphere of speculation.

We must assume that correct and full instructions were given describing the material facts which must be established to make out larceny in some one or more of its forms; and insisting upon the necessity that the jurors be satisfied beyond a reasonable doubt of the truth of those material facts before they could render a verdict of guilty.

There was no error in refusing to direct a verdict of not guilty.

*Exceptions overruled.*