COMMONWEALTH *vs.* HAZEL LELAND.

Suffolk.     April 6, 1942. — May 25, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Larceny.   False Pretences.   Fraud.*

Evidence warranted findings that a defendant obtained money from a woman by representing that it would be invested for her in the stock market; that when he so represented he did not intend so to use the money or to repay it; that the transaction was not a loan by the woman to the defendant; that the entire transaction was a fraud perpetrated on her by the defendant; and that the defendant was guilty of larceny at common law and of larceny by false pretences.

INDICTMENT, found and returned on January 10, 1941.

The case was heard by *Higgins*, C.J., without a jury.

*J. C. Johnston*, for the defendant.

*E. M. Sullivan*, Assistant District Attorney, for the Commonwealth.

Cox, J. One count in the indictment against the defendant charges her with stealing money belonging to one Eunice P. Blair. The defendant waived her right to a trial by jury, and the trial proceeded before the Chief Justice of the Superior Court, subject to the provisions of G. L. (Ter. Ed.) c. 278, §§ 33A–33G, inclusive. The defendant was found guilty on this count, and not guilty on the two other counts in the indictment. We consider the assignments of error of the defendant that have been argued.

One assignment is to the denial of the request that upon all the evidence the defendant is entitled to a finding of not guilty. Under the indictment, the defendant could be found guilty of larceny at common law, of larceny by a false pretense, or of embezzlement, G. L. (Ter. Ed.) c. 266, § 30, depending upon the state of the evidence. *Commonwealth* v. *Kelley*, 184 Mass. 320, 324. *Commonwealth* v. *King*, 202 Mass. 379, 387–389.

There was evidence that the complainant, Mrs. Blair, first met the defendant in February, 1938, when she was brought to Mrs. Blair's house by a Mrs. Wheeler, a friend of Mrs. Blair. On that occasion Mrs. Wheeler said that the defendant had a very large account with a brokerage concern in Boston and that she had invested a great deal of money with her; that the defendant had had phenomenal success in the stock market over a period of years, and she asked Mrs. Blair why she did not give the defendant some money to invest for her in the stock market. The defendant asked Mrs. Blair if she would like to invest some money with her and said that she had a very large account with the brokerage concern that had been named by Mrs. Wheeler. Nothing was decided upon at this time. In March, Mrs. Blair received a letter from the defendant in which the latter "recalled" that she had suggested that Mrs. Blair give her some money to invest for her in the stock market, and asked that she destroy the letter because the defendant was not a broker and had no right to invest

for her, but that she was going to do it in a friendly way. Thereafter, the defendant called Mrs. Blair on the telephone once or twice and asked her if she had decided to give her money to invest for her, and Mrs. Blair told her that she had not.

In April, 1938, Mrs. Wheeler, Mrs. Blair and the defendant met again and the defendant asked Mrs. Blair if she was ready to give "her the money to invest for . . . [Mrs. Blair]" and suggested $1,200, saying that Mrs. Blair could get a loan at the bank. Mrs. Blair told her that she would get the loan and the defendant said she was very glad of this because she knew she could get money for her; that she could make money for her. The defendant said that she had a "very, very large account" and that all her stocks were "high-grade . . . American Telephone & Telegraph; American Tobacco; Eastman Kodak; United States Steel." Mrs. Blair went to the bank and obtained a loan of $1,200, the proceeds of which were $1,183.50, and returned to the defendant, who then told her that she would never regret giving her the money "for investment," and that during her absence she had called up the brokerage concern and ordered fifty shares of United States Steel, adding, "So we are already started . . . in this investment plan." She also said that she was going to buy sixteen shares of Eastman Kodak stock for Mrs. Blair; that the brokerage concern had given her a desk in their office because her account was so large; that she was going to invest in "gilt-edged" securities and was going to deliver them to her; and that this was a friendly transaction because she was not a broker and had "no right to take money to invest." Mrs. Blair gave the defendant the check that she had received from the bank, and the defendant signed and gave her the following writing: "April 27, 1938. Received of Eunice Blair twelve hundred dollars to be used in stock market. I agree to pay back 1200 plus 16 shares Eastman Kodak. Final transaction completed Monday, June 6th, 1938, and transfers made and account closed. This was a friendly transaction." On June 21, 1938, the defendant signed and gave Mrs. Blair the following writing: "Received of Mrs. Blair,

$45, toward transfer and taxes on securities. (Signed) Helen Leland. June 21, 1938." Mrs. Blair never received any stocks of any kind from or through the defendant, and up to June 6, 1938, she received no money from her.

Sometime in May the defendant told Mrs. Blair that she was getting along "fine" with Mrs. Blair's account. In June, 1939, Mrs. Blair and her daughter met the defendant, and Mrs. Blair told her that she had found out that the defendant had been "blacklisted" in all brokerage houses in Boston. The defendant said that this was not true. Mrs. Blair told her that it had been a long time since she had promised her the stock and asked where it was, and the defendant replied: "It is coming, but I have been held up, one thing after another has happened, but you are surely going to get it, but things have been slow." In August, 1940, Mrs. Blair telephoned the defendant that she wanted her to come to her home as she wished to talk with her, whereupon the defendant said: "You won't have anyone there, will you?" and Mrs. Blair said: "Oh, no." Mrs. Blair told the defendant that she had waited a long time for the stock and that she had decided that, if the stocks were not delivered to her, she was going to the district attorney. The defendant seemed very much perturbed and said: "Please don't do that. . . . You don't know what it feels like to walk down the street expecting any moment to have some one touch you on the shoulder. . . . If you will give me . . . a little more time, I will have your stock." Mrs. Blair went to the police in December, 1940. In the meantime the defendant had given her $30, and, thereafter, $72.50.

On cross-examination Mrs. Blair testified that on April 27, 1938, when the three women were at lunch, she had practically made up her mind to let the defendant have the money as soon as she found out how much it would take; that she had decided to wait until she had talked with her and that when the defendant mentioned $1,200, she then decided to let her have the money; that she asked the defendant what she was going to invest in and was told that she always invested in "high-grade" stocks and was going to get her sixteen shares of Eastman Kodak; that

she was going to buy and sell stock in the meantime; that she was a "trader"; that she was to deliver these sixteen shares of Eastman Kodak stock on June 6; that the writing that the defendant gave her stated her agreement with the defendant; that she understood that the defendant gave her this "memorandum" acknowledging $1,200 and that she was going to return that and sixteen shares of Eastman Kodak stock by June 6; that she was going to get the shares with the money and with buying and selling stock; and that the money was to be used by the defendant in trading back and forth in the market.

There was other evidence that in June, 1939, the defendant stated in Mrs. Blair's presence that she was trading for her and investing money for her in stocks, and that the stocks "would be on their way"; that eventually all the stock would come through to her satisfaction, and that the stock was coming.

There was other evidence that in June, 1941, after Mrs. Blair had seen the police, the defendant telephoned to one of the probation officers in Boston and stated that she had been making "restitution" to the two people involved, including Mrs. Blair. The defendant was interviewed by the police in December, 1940, to whom she stated that she never received $1,183.50 from Mrs. Blair; that she was not in the stock "business" and had not bought or sold stock since 1933; and that she was not supposed to buy any stock and never received the money. When asked about another transaction with Mrs. Blair involving $200, she said that that was a loan. When asked what she would say if she was shown the receipt or writing of April 27, 1938, she said: "Have you got that?" When informed that they had, she added: "I won't answer any more questions." At the close of the interview she was asked if she was positive that she did not receive $1,183 from Mrs. Blair and said: "I am positive." When asked again about the receipt, she added: "I have nothing more to say."

In this state of the evidence we are of opinion that there was no error in the denial of the request that upon all the evidence the defendant is entitled to a finding of not guilty.

It is to be observed that in the consideration of this assignment of error this court is not concerned with the specific aspect of the crime of larceny of which the defendant was found guilty. On the contrary, the request presents the question whether the defendant could be found guilty at all. It could have been found that the transaction, in so far as the defendant was concerned, was a fraud from start to finish. In fact, the judge found "upon all the evidence," that the defendant did not intend, at the time the money was delivered to her, to repay it. It could have been found that Mrs. Blair intended to part merely with the possession of the money, not with her title or ownership. Upon all the evidence, it could have been found that the defendant was guilty of larceny at common law. *Commonwealth* v. *Barry*, 124 Mass. 325, 327. *Commonwealth* v. *Lannan*, 153 Mass. 287, 289. *Commonwealth* v. *Flynn*, 167 Mass. 460, 463. *Commonwealth* v. *King*, 202 Mass. 379, 392, 393. *Commonwealth* v. *Pappathanous*, 257 Mass. 459, 464. See *Commonwealth* v. *Glassman*, 253 Mass. 65, 71–73. We are also of opinion that the evidence warranted a finding of guilty of larceny by false pretence. It could have been found that the defendant obtained Mrs. Blair's money by false pretence as to her intention concerning its use, *Commonwealth* v. *Althause*, 207 Mass. 32, 47, 48; *Commonwealth* v. *McKnight*, 289 Mass. 530, 546–547, and cases cited; *Schleifer* v. *Worcester North Savings Institution*, 306 Mass. 226, 228, 230, and by other false representations of fact upon which Mrs. Blair relied to her damage. Inasmuch as the evidence warranted these findings, it is unnecessary to determine, in dealing with this specific assignment of error, whether the defendant could have been found guilty of embezzlement.

The next assignment of error is to the refusal of the judge to rule, as matter of law, that the transaction of April 28, 1938, was a loan. In support of this contention the defendant stresses the importance of the writing dated April 27, 1938, hereinbefore set out. She contends that this was the agreement, and, in fact, there is evidence that Mrs. Blair said that it was. The defendant contends that the agree-

ment, in effect, was one by the terms of which she was to pay interest on a loan. Her contention appears to be based upon the theory that the Commonwealth was bound by Mrs. Blair's testimony. It is true that the evidence of the relationship between the defendant and Mrs. Blair depends upon the latter's testimony. But it was for the judge to determine what part, or parts, were to be accepted as true. *Commonwealth* v. *Whitcomb*, 277 Mass. 27, 28. *Lydon* v. *Boston Elevated Railway*, 309 Mass. 205, 206–207. Moreover, if Mrs. Blair's testimony as to her understanding of the force and effect of the writing be put to one side, it cannot be said that there was no other evidence in the case to support the judge's finding that the transaction was not a loan. It is unnecessary to repeat the evidence already recited, although reference is made to the fact that in the writing in question the statement appears that the $1,200 was received by the defendant "to be used" in the stock market. The contention of the defendant has not been overlooked that the agreement between Mrs. Blair and her was that she was paying interest for the use of the money in the nature of a bonus, the interest being the difference between the amount of the check that was given the defendant and $1,200, plus sixteen shares of Eastman Kodak. The judge was not required to take this view of the evidence.

The defendant states in her brief that the issue whether the transaction was a loan is also raised by other assignments of error. All of these assignments are to the refusal of requests for rulings that are based upon the premises that her agreement was to repay the money within a fixed time or to repay a loan at a future date with a stock bonus for the accommodation. The judge, however, in dealing with these requests, found that the money was not delivered to the defendant upon an agreement to repay the same, that the relationship of debtor and creditor did not exist between the defendant and Mrs. Blair, and that Mrs. Blair did not bargain for a contract to repay a loan with a stock bonus "for the accommodation." From what has already been said, we think these findings were warranted

by the evidence and that there was no error in the manner in which the judge dealt with these requests.

Error is assigned in the denial of the request for a ruling that, upon all the evidence, the transaction created a relationship of debt, and not of trust. In denying this request the judge stated that he found as a fact that the defendant did not intend, at the time the money was delivered to her, to repay the same; that the transaction did not create the "relationship of debt between the parties, but that on the contrary [it] created one of trust." It could have been found that Mrs. Blair gave the defendant her money for the general purpose of investing it for her, not wholly for the purpose of buying specific securities (see *Commonwealth v. Anthony*, 306 Mass. 470, 476, 477), but upon her reliance upon the defendant's false representation that it was her intention to use the money for this general purpose. In this connection, however, it is to be observed that the writing that the defendant gave Mrs. Blair related, in part, specifically to sixteen shares of Eastman Kodak stock, and we think it could have been found that at least the money was delivered for the specific purpose of purchasing these shares. We think that, upon all the evidence, it could have been found that legal title to the money was vested in the defendant as trustee, and that she was to exercise dominion over at least a part of it in determining the kind of investments that were to be made. Compare *Millett v. Temple*, 285 Mass. 87, 89. The true relationship between the parties to the arrangement is to be ascertained from all the evidence. Apart from the undertaking relative to the sixteen shares of Eastman Kodak stock, it could have been found that the defendant was to be free from any interference or control by Mrs. Blair, except for wrongdoing, and that if she had honestly received the money upon a trust, express or implied, her possession would have been rightful. See *Commonwealth v. Barry*, 124 Mass. 325, 327; *Commonwealth v. McDonald*, 187 Mass. 581, 584. The defendant contends that the relationship between Mrs. Blair and her was of a business character, and not fiduciary, and that the case comes within the purview of *Plumer v. Luce*,

310 Mass. 789. But the facts in that case distinguish it from the case at bar. The judge found that the transaction was not a loan and that no debt was created, and further, that when the defendant received the money she did not intend to repay it, and that she made false representations to Mrs. Blair with the intent to deceive and defraud her; and, accordingly, we think there was no error in the manner in which the request now under consideration was dealt with by him. We think it could have been found that the entire transaction, so far as the defendant was concerned, was permeated with fraud.

The remaining assignments of error relate to the manner in which the judge dealt with two requests as to the effect of any misrepresentations that may have been made after Mrs. Blair "had made up her mind" or "had fully determined" to turn over or pay the money in question to the defendant, and also that these representations, as matter of law, did not warrant the conviction of the defendant of larceny by obtaining money by false pretences. The judge allowed the request relating to any representation made after Mrs. Blair "had made up her mind," with the qualification that it was applicable if Mrs. Blair's mental process had reached a point that did not admit of a further change. The other request, relating to a representation made after Mrs. Blair "had fully" determined to pay over the money to the defendant, was denied, not for the reason that it was not a correct statement of law, but for the reason that when the representation was made, she had not so fully determined. Here again the defendant apparently relies upon the proposition that the Commonwealth is bound by some parts of Mrs. Blair's testimony. It is true that she testified that she had decided to give the defendant the money at the time they were at lunch, and, from the evidence, it appears that this was before she had borrowed the money, and also before the defendant told her that she had ordered fifty shares of United States Steel stock. However, from what has already been said, it was for the judge to determine when Mrs. Blair did make up her mind, or when she became fully determined, and it could have been found

that this was not until the money was, in fact, handed to the defendant. *Commonwealth* v. *Whitcomb,* 277 Mass. 27, 28. We think there was no error in the manner in which the judge dealt with these requests.

It is unnecessary to refer to the evidence of the conduct and statements of the defendant after April 27, 1938, beyond saying that from it, it could be found that the defendant was conscious of guilt (see *Commonwealth* v. *Barber,* 261 Mass. 281, 288, and cases cited; *Commonwealth* v. *Derby,* 263 Mass. 39, 46, 47), and also, that she never intended to carry out her undertaking and made no effort to do so.

Finally, the defendant contends that the case at bar comes within what was said in *Commonwealth* v. *Albert,* 310 Mass. 811, 820–821, but that case is distinguishable. In the case at bar there was no error as to the matters assigned.

*Judgment affirmed.*