RUFUS DAVIS *vs.* ROBERT ALLARD & another.[1]

No. 93-P-822.

Suffolk. May 18, 1994. - October 20, 1994.

Present: SMITH, KAPLAN, & LAURENCE, JJ.

Further appellate review granted, 419 Mass. 1102 (1994).

*Collateral Estoppel. Evidence,* Admissions and confessions, Guilty plea. *Practice, Criminal,* Admission to sufficient facts to warrant finding. *Negligence,* Duty to prevent harm, Police, Expert opinion. *Agency,* What constitutes, Scope of authority or employment. *Practice, Civil,* Verdict.

In a negligence action, the judge correctly denied one defendant's motions for a directed verdict and for judgment notwithstanding the verdict; and the judge correctly allowed in evidence as admissions that defendant's admission to sufficient facts to the allegations in criminal complaints arising out of the same automobile accident. [510-511]

At the trial of a negligence action the judge correctly allowed expert testimony with respect to one defendant's failure to exercise due care in its voluntary undertaking to make provisions for its patrons to cross a highway next to its premises, and the evidence was sufficient to present a question for the jury on that theory. [512-513]

At the trial of a negligence case, the evidence did not support the plaintiff's alternative theory of liability, respondeat superior, where the defendant was not in control of the independent contractor in question and no acts of the independent contractor, in any event, were shown to have been negligent; that defendant's motion for judgment notwithstanding the verdict should have been allowed. [513-514]

A new trial was required in a civil action where, of two theories of liability on which the plaintiff proceeded, one theory would support the jury's verdict and the other would not, and there was no way to ascertain on which theory the jury had relied. [514-515]

CIVIL ACTION commenced in the Superior Court Department on March 9, 1984.

The case was tried before *Barbara J. Rouse,* J., and a motion for a new trial was heard by her.

[1]Westwood Group.

*Paul M. Moretti* (*Richard L. Neumeier* with him) for Westwood Group.

*Timothy E. Sterritt* for Robert Allard.

*Kevin Truland* for the plaintiff.

KAPLAN, J. In consequence of an accident on Route 1A in Revere, the victim, plaintiff Rufus Davis, recovered a judgment against the defendants Robert Allard and Westwood Group, doing business as Wonderland Greyhound Park (Wonderland). Upon the present appeal by these defendants, we affirm the judgment against Allard, but reverse the judgment against Wonderland for a new trial.

On March 11, 1982, the plaintiff Davis went with a friend, Toni LeMieux, to the dog races at Wonderland Greyhound Park in Revere. They arrived shortly before the first race scheduled for 8 P.M. Davis parked his car in a Wonderland parking lot, and the two walked a short distance to the edge of the parking lot at the location of a painted crosswalk on Route 1A (VFW Parkway) to be traversed to reach the track.

Route 1A at this point had two lanes and a breakdown lane in each direction, northbound (close to the parking lot) and southbound (close to the track), with a median strip separating the traffic. Patrons from the parking lot, often in considerable numbers, would assemble at the crosswalk and would wait until it had been made safe to cross. A police officer on paid detail would walk out from the median strip into the northbound traffic, perhaps thirty feet short of the crosswalk, halt the traffic by hand signal, and the assembled persons would then cross. After they had done so, the officer would direct the traffic to resume and he would return to the median strip. As another group assembled, the process would be repeated. (A second officer dealt similarly with the southbound traffic.)

On the night in question, Revere police officer Sabatino Falzarano, handling the northbound side of Route 1A at the crosswalk location, evidently attempted to carry out the usual routine, but a van driven by the defendant Robert Allard ran past the officer and struck and injured Davis as he, with Le-

Mieux, was walking on the crosswalk toward the median strip.

Davis brought suit which after amendment comprised as defendants Allard, Edward Poulin (Allard's employer and owner of the van who, as it happened, was a passenger in the van at the time), Wonderland, city of Revere (employer of Officer Falzarano), and Trolley's Food and Spirits (a restaurant where Allard had spent time earlier that evening). Apparently the case against Trolley's was discontinued. After trial, a jury responding, as to each of the remaining parties, to questions about negligence, proximate cause, and responsibility found as follows: Allard seventy-eight percent responsible, Wonderland thirteen percent, Davis nine percent (the jury found for Revere and Poulin). Judgment entered accordingly.[2] Allard and Wonderland appeal.

1. *Allard's appeal.*[3] Allard testified that he was driving within the speed limit in the travel lane and saw the officer, who was standing in the passing lane, make a motion for him to stop. He testified that his sight of the officer had initially been obstructed by cars stopped in the passing lane. By the time he saw the officer, his van was too close to the officer to stop safely. Therefore he kept going. At the last moment, he saw Davis and LeMieux leave a crowd of pedestrians and go onto the road and that is when the accident occurred.

The jury was not obliged to accept Allard's story; it was challenged by other evidence, e.g., the testimony by Officer Falzarano that in his experienced opinion the van was exceeding the speed limit, which might account for Allard's failing to stop in time and in safe position.

Allard also confronts the fact that he was charged with the crimes of operating an automobile under the influence of intoxicating liquor and operating an automobile so as to endanger life and safety, both charges arising from the incident in suit. Allard admitted to sufficient facts to warrant findings of guilty, see Mass.R.Crim.P. 12(a)(3), 378 Mass. 866 (1979),

---

[2]Total damages were found at $247,200 (subject to a 9% deduction).

[3]Allard moved for a directed verdict, denied; after verdict he moved for a new trial (not judgment n.o.v.), also denied.

and *Commonwealth* v. *Russell, ante* 152, 154-156 (1994). Over objections, the rule 12(a)(3) admissions were allowed in evidence and treated as testimonial admissions in the civil action.

This was correct. Had a judge or jury after trial found Allard guilty of these crimes, then Davis, plaintiff in the civil action, could invoke the doctrine of collateral estoppel to preclude the defendant Allard (formerly the criminal defendant) from relitigating the issues decided in the criminal prosecution. See *Aetna Cas. & Sur. Co.* v. *Niziolek*, 395 Mass. 737, 742 (1985), adopting Restatement (Second) of Judgments §§ 29, 85(2)(a) (1982). But suppose not a trial and conviction but a guilty plea: preclusive effect could not be accorded because the issues would not have been "actually litigated" in the criminal prosecution, but the plea itself would be received as an admission. *Aetna Cas. & Sur. Co., supra* at 747. Restatement at § 85 comment b. The same reasoning applies to an admission to sufficient facts. See *Commonwealth* v. *Greene*, 400 Mass. 144, 145-146 (1987), noting that an admission to sufficient facts is the "functional equivalent" of a guilty plea; and see *Commonwealth* v. *Mahadeo*, 397 Mass. 314, 316 (1986), stating that the failure to take an appeal from an admission to sufficient facts gives a finality to the ensuing judgment of conviction "identical" to that which attaches to a conviction on a plea of guilty.[4] We conclude that Allard's appeal, seeking a new trial, fails.[5]

---

[4]Over groundless objection, the judge admitted the court records that substantiated the facts of Allard's admissions and the subsequent entry of convictions.

[5]A further point in Allard's appeal: Counsel for Revere in his opening statement to the jury said there would be testimony that Allard, cited for the two offenses, was given a breathalyzer test, where he scored 0.17. Testimony about the breathalyzer was offered but excluded (because the officer testifying was not the officer who had administered the test) and Allard moved for a mistrial. This was denied in the judge's discretion, see *Riley* v. *Davison Constr. Co.*, 381 Mass. 432, 444 (1980), and the discretion was not abused. Counsel's statement was made in good faith in the expectation that it would be supported by admissible evidence, see *Commonwealth* v. *Errington*, 390 Mass. 875, 882-883 (1984); *Commonwealth* v. *Hartford*, 346 Mass. 482, 486 (1963). The judge warned that opening

2. *Wonderland's appeal*.[6] Davis based his case against Wonderland on two theories: that the described system in use in and about the crosswalk for getting the crowd over the highway was intrinsically inadequate and contributed to the accident, and Wonderland should and could have done better; and that the officer on the particular occasion behaved negligently and Wonderland was responsible for the consequences.

a. We may put to one side the question whether Wonderland was under a duty to make provision for safe passage of patrons over the highway, a public facility. The fact is that Wonderland voluntarily undertook the task and was thus cast with a duty to exercise due care in carrying it out. See *Thorson* v. *Mandell*, 402 Mass. 744, 748 (1988).

The plaintiff offered James D'Angelo as an expert and he qualified as such. He was an engineer who had served professionally in the Department of Public Works (DPW) and also in private employment. He sized up the problem as "a large movement of people over a short period of time to cross a heavily traveled way" in various conditions of weather, day and night. In the expert's opinion, the method used by Wonderland, consisting largely of the officer's advancing into the traffic and stopping it, was inadequate as a system to solve the problem. In particular, even taking into account the overhead lighting in the parking area and at the other end of the crosswalk, the visibility of the officer during his maneuvers was in question. This difficulty may have had some causal hand in the episode at bar.

D'Angelo testified that the safety situation could have been measurably and feasibly improved by the installation of standard traffic lights operated in standard ways; he also described the alternative of the construction of a pedestrians' bridge or overpass.[7] To carry out either suggestion, Wonder-

---

statements were not evidence. Any possible prejudice was at a minimum in the face of Allard's admissions mentioned above.

[6]Wonderland moved for a directed verdict, denied, and later for judgment n.o.v. or a new trial, denied.

[7]D'Angelo put the cost to Wonderland of traffic lights, at approximately

land would have to apply to the DPW and obtain its permission and cooperation. D'Angelo had had experience both from the private and public sides with the process of seeking and obtaining permits for changes in public roads and accomplishing the changes. Basing himself on the criteria established for granting permits and past decisions applying the criteria, D'Angelo was confident that Wonderland would not encounter any material difficulty. There was objection by Wonderland to D'Angelo's testimony on grounds of its being too speculative, but in our view the judge was right to admit it. On the whole, we think the record made presented a question for the jury on the plaintiff's first theory.

b. As to the plaintiff's second theory, supposed negligence on Falzarano's part, it is possible to hypothesize such fault, e.g., that Falzarano might not have signaled in time to cut off Allard's progress, but the plaintiff in his brief does not point to any specific record material tending to prove Falzarano's negligence. Thus the case against Wonderland fails, without getting into the question whether Wonderland "controlled" the officer and would be responsible if he could be found negligent.

The parties, however, debate the question whether Wonderland is shown to have controlled the officer so as to come under obligation for his tortious acts, if there were any.[8] It is quite clear that the answer is in the negative. Wonderland paid a lump sum for a detail of Revere police officers, some of them assigned to the traffic job. These officers responded to and were under the direction of a lieutenant or other senior officer who was located in a small police office on Wonderland property. The officers, in uniform, carried on traffic duties as they had learned them in police academy and by daily experience on the streets. They could make arrests and

$100,000, a figure he thought tolerable when considered in the long run. He thought even $1.2 million for an overpass could be justified economically.

[8]Wonderland asked the judge to put particular questions to the jury on several factors that may influence a determination regarding "control." The judge in her discretion declined the request.

Wonderland argues that the judge's charge on control was in error but we think it was adequate on the whole.

in other ways behaved as they did in the streets. Wonderland did not exercise any oversight of the control of traffic; this was left to the police. No doubt Wonderland jointly with the police decided on the number of officers required and the locations at which they should be placed. If some functionary of Wonderland happened to object to a given officer who appeared to be soldiering on the job, Wonderland could request a change. But all this does not add up to control in the sense of the prior decisions, and the officers would be denominated "independent contractors." See *Kidder* v. *Whitney*, 336 Mass. 307, 308-309 (1957); *Yates* v. *Salem*, 342 Mass. 460, 461-462 (1961); *Luz* v. *Stop & Shop, Inc.*, 348 Mass. 198, 206-207 (1964). The case of *Davis* v. *DelRosso*, 371 Mass. 768, 771-772 (1977), is to be distinguished. There the officer was engaged in the customary role of a "bouncer." He was on private premises, acting alone, not under the direction of any superior officer. The contrast with Falzarano's situation is plain.

Thus, whether by reason of lack of proof of negligence on the officer's part, or lack of responsibility on Wonderland's part for the officer's putative negligence, the plaintiff failed on his second theory to the point where, separately considered, Wonderland would be entitled to a direction or judgment n.o.v. upon it.

c. We are left in the curious condition that the jury, in finding against Wonderland (thirteen percent), may in fact have upheld the second theory, which would be untenable, rather than the first theory, which would be acceptable. Where "there is at least one theory . . . that would support the jury verdict for the plaintiffs in this case and another that would not and we cannot ascertain on which theory the jury relied, the verdict cannot stand." *Carleton* v. *Framingham*, 34 Mass. App. Ct. 686, 695 (1993). See *Slate* v. *Bethlehem Steel Corp.*, 400 Mass. 378, 384 (1987); *Kelley* v. *Stop & Shop Cos.*, 26 Mass. App. Ct. 557, 559 (1988).[9] Such is our modern law. We observe in passing that an older

---

[9]In arguing after verdict the question of a new trial, Wonderland seems to have contended that the judge should have submitted the two theories

view in the Commonwealth would have presumed that the jury acted on the valid rather than on the invalid alternative: this is referred to in *Federal Deposit Ins. Corp.* v. *Holbrook & Johnston*, 36 Mass. App. Ct. 424, 429-431 (1994), and see the discussion there of the recent decision of the United States Supreme Court on that line in *Griffin* v. *United States*, 502 U.S. 46 (1991).

The judgment against Allard is affirmed as is the denial of his motion for a new trial. The judgment against Wonderland is reversed for a new trial.

*So ordered.*

---

separately to the jury. But this procedure, which might have been helpful, was not requested earlier and would then lie in the judge's discretion.