# DECISIONS

## OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

---

COMMONWEALTH *vs.* BERNARDO NADAL-GINARD.

No. 95-P-1329.

Suffolk. March 13, 1996. - January 2, 1997.

Present: SMITH, IRELAND, & LAURENCE, JJ.

*Larceny. Embezzlement. Practice, Criminal,* Instructions to jury.

At the trial of indictments alleging multiple counts of larceny over $250, the evidence warranted the judge's instructions to the jury on the alternative theories of embezzlement or larceny by false pretenses and the indictments and bills of particulars adequately afforded the defendant reasonable knowledge of the nature and grounds of each offense charged. [3-10]

At the trial of indictments, where the evidence supported findings of guilt on either or both theories of culpability presented, no substantial risk of a miscarriage of justice could have been occasioned by the judge's correct general unanimity instruction. [10-12]

INDICTMENTS found and returned in the Superior Court Department on January 27, 1994, and July 26, 1994, respectively.

The cases were tried before *Christine M. McEvoy*, J.

*Morris M. Goldings* for the defendant.

*Gail McKenna*, Assistant Attorney General, for the Commonwealth.

LAURENCE, J. The defendant, Bernardo Nadal-Ginard, was indicted on twenty-two counts of larceny of over $250 in violation of G. L. c. 266, § 30.[1] The alleged larcenies all occurred in 1992 in the course of the defendant's activities as president of the Boston Children's Heart Foundation (BCHF), which is the incorporated cardiology department of Children's Hospital Medical Center, and involved the alleged misuse by the defendant of BCHF funds.

A jury found the defendant guilty of twelve counts of larceny. The trial judge declared a mistrial on the remaining ten counts, after the jury failed to reach a verdict thereon.[2] After being sentenced to a term of imprisonment,[3] the defendant obtained a stay of execution of sentence from a single justice of this court pending the disposition of his appeal. In this appeal, the defendant attacks numerous of the trial judge's actions, principally the judge's submitting to the jury (over his motions for a required finding), and instructing the jury on, the theory of his alleged larceny by false pretenses (which he argues was not supported by the evidence at trial). Related to that claimed error is his assertion that the judge failed to give a specific unanimity instruction. We agree with the Commonwealth that neither those contentions nor his

---

[1]General Laws c. 266, § 30, provides, in pertinent part: "Whoever steals, or with intent to defraud obtains by a false pretense, or whoever unlawfully, and with intent to steal or embezzle converts, or secretes with intent to convert, the property of another as defined in this section, whether such property is or is not in his possession at the time of such conversion or secreting, shall be guilty of larceny . . . ." There is no dispute that the checks and funds at issue in this matter were "property" within the statute. There is also no dispute that those checks and funds were "property of another," for the reason, if no other, that they belonged to someone other than the defendant. See *Commonwealth* v. *Casale*, 381 Mass. 167, 168 (1980); *Commonwealth* v. *Donovan*, 395 Mass. 20, 29 n.6 (1985); *Commonwealth* v. *Souza*, 397 Mass. 236, 238 (1986).

[2]As to eight of those counts, the defendant had raised the defense of insanity.

[3]The sentence imposed included a sentence as a "common and notorious thief" because of the defendant's conviction of at least "three distinct larcenies." See G. L. c. 266, § 40.

other assigned errors[4] warrant disturbance of the guilty verdicts. We therefore affirm his convictions.

Despite the voluminous evidence and the intricate nature of the defendant's challenged transactions, the essence of both the facts and the main legal issue before us is not complex. There is no question that the jury could have fairly inferred from the evidence that certain BCHF checks were drawn, by or at the direction of the defendant, by which BCHF funds either ended up in the defendant's personal account or were used to pay the defendant's personal obligations.[5] The

---

[4]In addition to the issue of the judge's instructing the jury on the theory of larceny by false pretenses and the related issue of her failing to give an unrequested specific unanimity instruction, discussed below, the defendant has challenged the judge's: (a) refusing to dismiss nine counts (representing nine separate larcenies over a nine-month period) that the defendant claimed (well after trial was underway) were "duplicitous" (eight of which were placed on file with his consent); (b) excluding as irrelevant evidence regarding contributions of its own funds to a Cleveland art museum by the Rosenthal Foundation, which had also donated funds to BCHF that the defendant was accused of misusing by, among other things, contributing them to a Boston art museum in satisfaction of his personal pledge; (c) denying his motions for a required finding of not guilty at the close of the Commonwealth's case and after all the evidence was in (see notes 7 & 10, *infra*); (d) refusing to give a requested "missing witness" instruction as to a witness who was equally available to both sides and not shown to have been more favorable to one side or the other; (e) substituting (in compliance with G. L. c. 234A, §§ 67 & 68) an alternate juror for a deliberating juror dismissed for good cause (with proper instructions to begin deliberations anew); and (f) imposing an allegedly excessive (though neither unlawful nor disproportionate) sentence (an issue raised for the first time on appeal). None of these additional contentions has merit or merits discussion.

[5]The specific checks as to which the defendant was found guilty were the following: (1) A check for $12,000 drawn on BCHF payable to the Institute of Contemporary Art. The defendant was a trustee of the Institute and as such agreed to donate money. He instructed the BCHF business manager, Jacqueline Yarrian Harris, to issue the checks, giving as the reason — a false one — the alleged BCHF corporate decision to do so in order to "prime the pump" to solicit reciprocal donations for BCHF; (2) A BCHF check for $32,000 payable to the Cardiovascular Surgical Foundation (CSF), which the defendant told Harris — falsely — to issue to reimburse CSF for the salary of Debra Kirby, a CSF employee, which created bookkeeping confusion resulting in an exchange of $32,000 checks between BCHF and CSF, one of which the defendant ended up depositing into his personal account; (3) A BCHF check for $1,777.50 payable to CSF to reimburse it for Carl Zeiss Company laboratory equipment, which represented the difference between a separate $19,777.50 CSF check to Carl Zeiss Company that the defendant obtained from CSF for the same equipment

defendant's main argument is that while the Commonwealth's evidence, if believed, might have supported findings that he embezzled the BCHF funds represented by the several checks at issue, the judge erroneously allowed the jury to find that he could have obtained those funds, or their benefit, as the result of larceny by false pretenses. That, he argues, was legally impossible because of his "rightful possession" of all BCHF monies by virtue of his office as president. If he stole, it was by embezzlement, not larceny by false pretenses.

In other words, he contends, the only evidence of his culpability was that he may have misappropriated BCHF funds by one means that was properly charged and adequately proved at trial (embezzlement); but the jury were improperly allowed to consider that he may also have done so by another means (false pretenses) not so charged or proved. He thus relies on the unexceptionable principles that a defendant charged with one offense cannot be convicted upon proof of another; and that when a jury returns a general verdict after being allowed to consider a theory of guilt without foundation in the evidence, as well as a theory supported by the evidence, a defendant's conviction must be reversed because it is impossible to determine whether the jury may have convicted him of an offense the Commonwealth failed to prove.[6]

The defendant is not, however, entitled to that reliance. We

(which check he falsely endorsed and deposited into his personal account) and the $18,000 balance in the BCHF fund that was applied to such purchases; (4) Nine monthly BCHF checks signed by Harris for $8,000 each payable to Richard Odyssey, an employee of a private corporation controlled by the defendant, who the defendant falsely told Harris worked for BCHF. As to his convictions on the second and third of these transactions, the defendant argues (without benefit of pertinent authority) that the verdicts were irrational and inconsistent, since the jury found him guilty only with respect to some but not all of the checks involved in each transaction. On the facts, however, the verdicts were neither impossible nor for mutually exclusive crimes and were not, therefore, inconsistent as matter of law. See *Commonwealth* v. *Sherry*, 386 Mass. 682, 698 (1982); *Commonwealth* v. *Diaz*, 19 Mass. App. Ct. 29, 33 (1984); *Commonwealth* v. *Harrison*, 25 Mass. App. Ct. 267, 270 (1988).

[6]See art. 12 of the Massachusetts Declaration of Rights; *Commonwealth* v. *Fickett*, 403 Mass. 194, 198-199 (1988); *Commonwealth* v. *Vinnicombe*, 28 Mass. App. Ct. 934, 935 (1990); *Commonwealth* v. *Kickery*, 31 Mass. App. Ct. 720, 724-725 (1991). The principle that a jury verdict cannot stand when one theory would support it but another would not and a general verdict prevents our ascertaining on which theory the jury relied, is also applicable in civil cases. See *Davis* v. *Allard*, 37 Mass. App. Ct. 508,

note initially that while the defendant did object to the judge's stated intention to instruct the jury on the theory of larceny by false pretenses as well as the theory of larceny by embezzlement,[7] his objection at that time was not (as he now argues) to the lack of trial evidence to support the former theory. It was, rather, addressed to the supposed failure of the indictments and the Commonwealth's bills of particulars specifically to include the words "larceny by false pretenses." The judge correctly concluded that the indictments and bills of particulars adequately afforded the defendant reasonable knowledge of the nature and grounds of each offense charged. She therefore properly rejected the supposed defect on the clear authority of G. L. c. 277, § 41, as well as *Commonwealth* v. *King*, 202 Mass. 379, 387-389 (1909); *Commonwealth* v. *Leland*, 311 Mass. 447, 448 (1942); *Commonwealth* v. *Corcoran*, 348 Mass. 437, 440-442 (1965); and *Commonwealth* v. *Kenneally*, 10 Mass. App. Ct. 162, 176 n.4 (1980).

---

514-515 (1994), *S.C.*, *Davis* v. *Westwood Group*, 420 Mass. 739 (1995). (The Federal courts, however, uphold guilty verdicts in criminal cases even if there is a lack of evidence on one submitted theory so long as there is a factually adequate basis for the jury to return a verdict of guilty on another theory. See *Griffin* v. *United States*, 502 U.S. 46, 56-58 [1991]). The defendant cited numerous cases in support of these basic propositions, none of which involved larceny crimes and all of which are distinguishable from the instant situation, where the jury could not conceivably have been confused about either the underlying facts — the defendant's obtaining personal benefit from BCHF funds diverted to noncorporate purposes on the basis of his misstatements — or the specifics of the offenses charged. It may be a legitimate cause for astonishment among ordinary citizens why it should make a difference which manner of theft is proved. Both species of theft result in the same damage to the rightful owner and are merely alternative techniques for the achievement of unlawful gain, between which prevailing moral standards do not differentiate sharply. Despite the merger of all types of larcenies in a single statute, G. L. c. 266, § 30, the distinctions among the former separate crimes of larceny, obtaining property by false pretenses and embezzlement may not have been wholly obliterated, but at the very least the evidence adduced must be sufficient to prove the elements of one or the other of the former separate crimes. See *Commonwealth* v. *King*, 202 Mass. 379, 388 (1909). See also *infra* at 6, 9, 12-13, and notes 8 and 16.

[7]The defendant had earlier made motions for required findings of not guilty, which had been denied, but he did not base such motions on the supposed lack of evidence of larceny by false pretenses. The defendant's objection to the proposed charge was prompted by the fact that instructions on both theories were requested by the Commonwealth.

General Laws c. 277, § 41, forecloses the defendant from successfully arguing, as in times past, that the manner of theft described in the charging document differed from the illegal technique actually proved. The statute explicitly permits convictions to be supported by evidence that the defendant's theft was committed in any manner condemned by the law.[8] Here, the indictments read in conjunction with the bills of particulars provided the defendant with all the essential facts with respect to the specific BCHF property he was charged with misappropriating, as well as when, where and how. Those documents also alerted the defendant, by reference to G. L. c. 266, § 30, to the Commonwealth's intent to apply any or all theories of statutory larceny to those essential facts as proved. See *Commonwealth* v. *Kiernan*, 348 Mass. 29, 33-34, cert. denied, 380 U.S. 913 (1964).[9]

Since the defendant failed to preserve at trial the central issue he presses here, he may be deemed to have waived this argument.[10] Nonetheless, it is appropriate to exercise our authority to review issues presented for the first time on appeal under the "substantial risk of a miscarriage of justice"

[8]General Laws c. 277, § 41, states, "In an indictment for criminal dealing with personal property with intent to steal, an allegation that the defendant stole said property shall be sufficient; and such indictment may be supported by proof that the defendant committed larceny of the property, or embezzled it, or obtained it by false pretenses."

[9]The defendant has not contended, in any event, that his defense would have been any different had the indictments and bills of particulars explicitly mentioned larceny by false pretenses. See *Commonwealth* v. *King*, 202 Mass. at 390; *Commonwealth* v. *King*, 387 Mass. 464, 468-469 (1982).

[10]The defendant did finally allude to the argument that the evidence did not support a theory of larceny by false pretenses in his *postverdict* motion to set aside the guilty verdicts and enter findings of not guilty. It was, however, only in a footnote, conclusorily asserting that the Commonwealth's proof had failed to establish any such crime. Not only did that somewhat cryptic, cursory contention come too late; it also had not been made in support of the defendant's motions for required findings of not guilty prior to submission of the case to the jury. The defendant's failure to make purported lack of proof of false pretenses culpability a basis for his challenge to the proposed instruction is especially striking in that: (a) the judge, in denying the motions for required findings, had explicitly opined that the Commonwealth had introduced sufficient proof of both larceny by false pretenses and embezzlement to send the case to the jury on both theories; and (b) the prosecutor had defended her request for a charge on both theories by asserting that they were both supported in the evidence. The defendant said nothing to controvert those statements, either before or after the instructions were given.

standard, see *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967), since the defendant effectively claims that the jury verdict may have been based upon insufficient evidence. See *Commonwealth* v. *McGovern*, 397 Mass. 863, 867-868 (1986). There was no error here, much less any substantial risk of a miscarriage of justice. See *Commonwealth* v. *Torres*, 420 Mass. 479, 482-483 (1995).

The defendant's challenge to the propriety of an instruction on larceny by false pretenses fails for several reasons. First, it is premised on a misapprehension as to his position as president. As noted earlier, without advancing any authority whatsoever, he pronounces that he had "rightful possession" of all BCHF funds, including the diverted and converted BCHF checks, "by virtue of his position and office." Thus, he already possessed them and could not have obtained them by false pretenses or misrepresentation. Therefore, he argues, he could not be guilty of "larceny by false pretenses [because it] 'differs from embezzlement . . . [where] the property is fraudulently appropriated by a person having rightful possession, whereas in obtaining money by false pretenses the property is acquired in the first instance by the false pretense.' "

It should be enough to refute the defendant's argument simply to restate the clear words of the statute (see *supra* at note 1): "Whoever steals [etc.] . . . the property of another . . . whether such property is or is not in his possession at the time . . . ." See *Commonwealth* v. *Chavis*, 415 Mass. 703, 708 (1993) ("Where the legislative purpose is expressed in clear statutory language, we must construe the statute in accordance with its terms . . ."). The plain purpose of the statute (G. L. c. 266, § 30) merging the former discrete theft offenses was to prevent culpable defendants from escaping punishment because of the subtle distinctions that had been judicially developed, often by accident of history, among the several crimes. See *Commonwealth* v. *Ryan*, 155 Mass. 523, 527-530 (1892); *Commonwealth* v. *King*, 202 Mass. at 388-389; *Commonwealth* v. *Corcoran*, 348 Mass. at 440-441. Given this unmistakable legislative intent, it should be of no material consequence where "possession" technically lay, so long as the evidence enabled the jury to find — as they did here — that the defendant either "fraudulently converted" to his personal use property (here BCHF funds) subject to his control by virtue of his (here conceded) position of "trust or

confidence," see *Commonwealth* v. *Hays*, 80 Gray. 62, 63-65 (1859); or knowingly induced another to part with property (here BCHF checks and the underlying funds they represented), the benefit of which he ultimately obtained, as a result of the other's reliance on his misrepresentations (here as to the supposed proper corporate purpose of the checks). See *Commonwealth* v. *Leonard*, 352 Mass. 636, 644-645 (1967). See also *supra* at note 5.

Moreover, the factual situation regarding the "possession" and control of BCHF's funds was not as clear-cut as the defendant would have it, but rather was sufficiently muddy and conflicting to justify the submission to the jury on alternative theories of culpability. On the one hand, the defendant's assertion of automatic "possession" of all BCHF funds by virtue of his presidency is mere ipse dixit. No Massachusetts authority for this proposition is cited or, to our knowledge, exists. To the contrary, as a matter of general corporate law, it is the treasurer, not the president, who is the only proper officer with inherent possessory custody of corporate funds, in the absence of a by-law or directors' resolution to the contrary. See *Merchants Natl. Bank of Gardiner* v. *Citizens' Gas & Light Co.*, 159 Mass. 505, 506-508 (1893); *New Hampshire Natl. Bank* v. *Garage & Factory Equip. Co.*, 267 Mass. 483, 486-487 (1929); *Lydia E. Pinkham Med. Co.* v. *Gove*, 303 Mass. 1, 9 (1939); Cox, Hazen & O'Neal, Corporations § 8.10 (1995).[11]

The by-laws of BCHF did not, contrary to the defendant's assumption, alter, but rather confirmed, that basic principle. The president was indeed denominated the chief executive officer, with general power of supervision and control over corporate affairs and the expenditure of corporate funds. It was the treasurer, however, not the president, who was expressly given "general charge of the financial affairs of [BCHF]" and, more explicitly, entrusted with the "care and custody of all funds of [BCHF] except as the Directors may otherwise provide."

---

[11]Principles of corporate governance with respect to the powers of officers are essentially the same for profit and nonprofit corporations. Cf. *Assessors of West Springfield* v. *Eastern States Exposition*, 326 Mass. 167, 169 (1950). If anything, the powers of officers of charitable corporations, like BCHF, are even more strictly confined. See *Boston Athletic Assn.* v. *International Marathons, Inc.*, 392 Mass. 356, 364-365 (1984).

The original BCHF treasurer, Donald C. Filer, retired sometime prior to the improprieties charged in the indictments. The situation thereafter is unclear regarding who subsequently may have served as, or in the capacity of, treasurer with lawful custody and control of the BCHF funds. Although no corporate resolutions in this regard appear in the record, it may well be that the defendant had in some fashion received directorial recognition or authorization as successor treasurer.[12]

On the other hand, any such authorization was not exclusive. The administrator of the department of cardiology, Jacqueline Yarian Harris — who was not a corporate officer — at some point received the authority (presumably from the directors, since the BCHF by-laws conferred check signing authority only upon the president or treasurer) to sign BCHF checks up to $50,000 herself. Checks above that amount required the signatures of both the treasurer and the president. All of the BCHF checks covered by the counts on which the jury returned verdicts of guilty were for amounts under $50,000 and were signed or prepared by Ms. Harris upon the defendant's oral directions — which the evidence established to have been false or misleading — as to their purpose and destination.[13] At least two of the BCHF checks included in the indictments, but as to which the jury were unable to reach a verdict,[14] were prepared and signed by the defendant himself.

Thus, the jury were confronted with a confusing factual sit-

[12]In instructing the jury on larceny by embezzlement, the judge in fact gave a single illustration, that of corporate treasurer, of the type of individual entrusted with property the conversion of which can support a finding of embezzlement. The defendant testified that he believed he had "sole responsibility" for the BCHF budget and funds and, indeed, appeared to regard BCHF itself as a mere mechanism for his administration of the cardiology department at the Children's Hospital rather than an actual separate corporate entity. In closing arguments, his counsel essentially argued that the evidence revealed BCHF to be the defendant's creature and alter ego. At least some of the BCHF funds (the Rosenthal Foundation grants) were regarded as "belong[ing] to" and were distributed by the defendant at his direction for specific departmental purposes.

[13]These were the checks that ended up either deposited in the defendant's personal bank account or used to discharge his personal liabilities. See *supra* at note 5.

[14]Those were the November, 1992, "Debra Kirby" check for $32,000 to the Children's Hospital's Cardiovascular Surgical Foundation and the

uation regarding the defendant's status and rights vis-à-vis BCHF's funds. From the circumstances in evidence, they might reasonably have found that, with respect to some or all of the checks at issue, the defendant did not have the unequivocal authority he now claims for himself — he may have been acting in his role as president, but may also have done so as successor to the treasurer, or possibly in a dual capacity. The jury could, therefore, have reasonably inferred (a) that by means of some of the checks, the defendant converted for his own purposes BCHF moneys with which he had been entrusted in his fiduciary capacity as de facto or de jure custodian of the corporate funds; as well as (b) that by means of other checks, the defendant diverted BCHF funds, not in his lawful custody but subject to his direction, to be withdrawn from the corporation upon his misstatements as to their intended corporate use and then appropriated them as his own or directed their use for his personal purposes. The task of resolving the factual conflicts, inconsistencies, and uncertainties in this regard was properly consigned by the judge to the jury. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 678-679 (1979); *Commonwealth* v. *Ruci*, 409 Mass. 94, 97 (1991); *Commonwealth* v. *Rossi*, 15 Mass. App. Ct. 950, 952 (1983); *Commonwealth* v. *Hastings*, 22 Mass. App. Ct. 930, 931 (1986).

On the facts presented, therefore, there was no error in the judge's challenged instruction, so there is no issue whether there might have been a miscarriage of justice. A properly instructed jury could rationally conclude that the Commonwealth's proof was adequate to support *both* the charge of larceny by false pretenses and the charge of larceny by embezzlement. See *Commonwealth* v. *King*, 202 Mass. at 390-392; *Commonwealth* v. *Corcoran*, 348 Mass. at 442. Cf. *Commonwealth* v. *Tuckerman*, 76 Gray 173, 201-204 (1857); *Commonwealth* v. *Langley*, 169 Mass. 89, 95-96 (1897); *Commonwealth* v. *Leland*, 311 Mass. at 452.[15]

The jury here were properly instructed on the theories of

December, 1992, check for $12,000 to the Institute of Contemporary Art. See *supra* at note 5.

[15]As noted in note 5, *supra*, there was evidence that the defendant had made a false representation as to all of the checks on account of which the defendant was found guilty. Even if error of the sort the defendant alleges occurred, it presents no substantial risk of a miscarriage of justice. The Commonwealth's case on the counts that resulted in guilty verdicts was

larceny submitted to them.[16] They were also properly instructed on the need for unanimity of verdict, contrary to the defendant's related argument that the judge erroneously failed to clarify for the jury that they were required to be unanimous as to the underlying theory of larceny where the evidence supported more than one theory of culpability. The defendant further claims in that regard that the judge's failure to give a specific unanimity instruction — which he did not request — created a substantial risk of a miscarriage of justice. Since his argument is premised on the supposed "absence of sufficient evidence" upon which a jury could base a finding of guilt with respect to larceny by false pretenses, it fails for the reasons set forth above.[17]

In any event, the judge's instructions did in fact inform the

---

strong, because there was no real dispute about the underlying inculpatory facts. The defense was not that the defendant did not do what the Commonwealth charged, but rather that what he did was within his authority, or somehow beneficial to the corporation, or somehow attributable to his financial advisor, or a product of his claimed insanity. Indeed, upon being exposed, the defendant admitted his culpability to a number of individuals, including the president of Children's Hospital, apologized for violating his trust, promised repayment of the funds he had misappropriated, and made belated efforts at restitution. Given the basically undisputed facts and the judge's correct charge on the relevant criminal elements, it is not plausible that the jury — properly instructed, without objection, to apply their common sense and experience in life to the evidence, *Commonwealth* v. *Latimore*, 378 Mass. at 678; *Commonwealth* v. *Carballo*, 381 Mass. 227, 229-230 (1980); *Commonwealth* v. *Cordle*, 412 Mass. 172, 178 (1992), and expected to apply "minds of ordinary intelligence and sagacity" to the issue of guilt, *Commonwealth* v. *Casale*, 381 Mass. at 168 — would have reached verdicts of innocent under the precise charge the defendant belatedly claims should have been given. See *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986).

·  [16]The defendant does not contend that the judge erred in defining either larceny by false pretenses or larceny by embezzlement, or in failing to set forth their requisite elements. Indeed, by instructing the jury that the Commonwealth was required to prove an intent to deprive BCHF permanently of its property, the judge gave the defendant a more favorable charge than he was entitled to. See *Commonwealth* v. *Hildreth*, 30 Mass. App. Ct. 963, 965 (1991).

[17]The argument additionally fails to rise to the required level of reasoned appellate argument. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). It consists of the following: "In the absence of sufficient evidence upon which the jury could find beyond a reasonable doubt that the Commonwealth had proved its case, it is likely that the jury verdict would have been different had the trial court given the [specific] unanimity instruction." The defendant does not explain this conclusory assertion or supply

jury that they were separately to consider each theory of culpability and to agree unanimously on a theory, as well as on the Commonwealth's proof of all necessary elements of the offense under that theory, as to each count of the indictment. Under the circumstances of this case — where there was evidence to support a finding of larceny by either or both theories of culpability — no substantial risk of miscarriage of justice could have been occasioned by the judge's general unanimity instruction. See *Commonwealth* v. *Sylvester*, 400 Mass. 334, 340 (1987); *Commonwealth* v. *Keevan*, 400 Mass. 557, 567 (1987).[18] Read as a whole, as we must, see *Commonwealth* v. *Ferreira*, 417 Mass. 592, 595 (1994), the judge's instructions were such that no reasonable juror could have been confused or misled as to his or her obligations in passing upon the issue of the defendant's guilt or innocence under either theory on each count.[19]

The Commonwealth has sufficiently responded to and refuted the defendant's additional assignments of error, and we need not discuss them further. We do, however, pause to mention the defendant's motion to strike the Commonwealth's brief, or particular "offending passages" thereof, for alleged

legal precedent supporting its application to the facts of this case. It is therefore inadequate. See *Commonwealth* v. *Silva*, 401 Mass. 318, 329 n.12 (1987); *Commonwealth* v. *Bowler*, 407 Mass. 304, 310 (1990); *Commonwealth* v. *Gordon*, 407 Mass. 340, 350 (1990); *Commonwealth* v. *Taylor*, 32 Mass. App. Ct. 570, 580 (1992).

[18]This case did not raise a problem of "factual unanimity," contrast *Commonwealth* v. *Conefrey*, 420 Mass. 508, 511-512, 513 n.9 (1995), because each count upon which the defendant was found guilty presented only one set of facts, not alternate sets of facts or episodes, on which he could be convicted. The defendant's reliance on *Commonwealth* v. *Berry*, 420 Mass. 95 (1995), for his "unanimity" argument, is of no avail because he failed to cite it until his reply brief. See *Assessors of Boston* v. *Ogden Suffolk Downs, Inc.*, 398 Mass. 604, 608 n.3 (1986). In addition, *Berry* applies only prospectively, only to first degree murder cases, and only when the defendant has requested a specific unanimity instruction. 420 Mass. at 111-112.

[19]Subsequent to oral argument, the Supreme Judicial Court decided *Commonwealth* v. *Plunkett*, 422 Mass. 634 (1996), and *Commonwealth* v. *Accetta*, 422 Mass. 642 (1996), which established a new procedural rule that where evidence would warrant a verdict on more than one theory, separate verdicts on each theory, reflected on separate verdict slips, should be obtained. Those cases do not assist the defendant's cause, however, because the rule is only of prospective application, and he did not preserve the issue at trial. See *Commonwealth* v. *D'Agostino*, 421 Mass. 281, 284 (1995).

"repeated and flagrant" violations of various appellate procedural rules. Although the Commonwealth did include in its discussion of the factual and procedural history of the case references to mistried counts on which the jury could not reach verdicts along with the guilty verdict counts, such an intermixture neither confused the panel nor prejudiced it against the defendant. The Commonwealth's introductory, argumentative paragraph, summarizing the defendant's defalcations and malversations but containing no specific record citations, was indeed a technical misstep, but the court was not misled by its rhetorical purpose or its content, which was properly supported elsewhere throughout the Commonwealth's brief. The Commonwealth's "spin" on the trial testimony was not a "total distort[ion]," as the defendant contends, but rather permissible adversary advocacy. To the extent the Commonwealth referred to matters outside the trial record, such matters would be and certainly were disregarded by the panel. Even more than with a jury, a "certain measure of . . . sophistication in sorting out excessive [or improper] claims on both sides may fairly be assumed" by the parties on the part of an appellate tribunal. Cf. *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 746 (1990). The defendant's motion to strike is denied.

*Judgments affirmed.*