COMMONWEALTH *vs.* CHARLES ENGLEMAN & others.

Bristol.    February 4, 1957. — May 9, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Conspiracy.    Larceny.    Words,* "Steal," "Process."

A trade secret or "confidential method" is not a "process" within G. L. (Ter. Ed.) c. 266, § 30 (2), as appearing in St. 1945, c. 282, § 2, nor otherwise a subject of larceny. [69]

A finding of conspiracy to steal a tool belonging to a corporation was not warranted by evidence showing at most a conspiracy to obtain information concerning the tool looking to its manufacture by one of the alleged conspirators with the assistance of others. [69]

INDICTMENT, found and returned on February 9, 1956.

The case was tried in the Superior Court before *Smith*, J.

*James S. Seligman,* for the defendant Engleman.

*John W. McIntyre,* Assistant District Attorney, for the Commonwealth.

WILLIAMS, J.    Charles Engleman, Louis Des Vergnes and Ernest Des Vergnes have been found guilty on an indictment which charged that on or about December 14, 1955, they "did conspire together to steal certain trade secrets, confidential methods, and tools belonging to Progressive Machinery, Incorporated, a corporation . . . situated in Attleboro, and in carrying out such conspiracy did attempt

to cause certain employees of the said . . . [corporation] to breach their written contracts with said corporation, and to steal certain drawings and blueprints."

There was evidence that Progressive Machinery, Incorporated (hereinafter called the corporation), was the owner of a special "hinge tool" used in the manufacture of small hinges for jewelry boxes, which its president had developed and perfected at a large expense in the space of about two years. The tool was not patented and its methods of manufacture were held by the corporation as trade secrets. The defendants Ernest and Louis Des Vergnes were employed by the corporation under an agreement executed January 19, 1955, under which they were prohibited, without its express consent, "from disclosing or using any trade secrets which they learned in the course of their employment." They were discharged on October 28, 1955, for alleged manipulation of time cards. As a result of the defendant Engleman's advertisement for "hinge tool makers" which it could be inferred was directed to employees or former employees of the corporation, the two Des Vergnes met him at Woonsocket, Rhode Island, on November 26, 1955. "Engleman asked the Des Vergnes if they could make a tool similar to the one used by Progressive Machinery Corp. He promised them 'good money' if they would come to work for him and make such a tool. They told him that they had signed an agreement with Progressive Machinery Corp. by which they were not permitted to divulge the method and operation of the Progressive hinge tool. Engleman told the Des Vergnes brothers not to worry about the agreement, that it did not mean anything and that his lawyer could break it."

Louis Des Vergnes arranged for Engleman to meet one Daniel Collins, a draftsman employed by the corporation, to discuss the matter of employment. Engleman thereafter met with Collins and the two Des Vergnes and offered Collins "good money to come to work for him . . . [saying] he was interested in getting prints and diagrams of Progressive's hinge tool." The Des Vergnes agreed to make a "hinge tool" like the corporation's and to assist in securing

"other help", who were working for the corporation. "Engleman urged Collins to secure drawings or copies of drawings of the Progressive Machinery Corp. hinge tool, and [said] that Engleman would put Collins on the payroll for some three months while Collins continued to work for Progressive Machinery Corp.; that at the end of the three-month period a hinge tool would have been built for Engleman from blueprints and designs furnished by Collins and in accordance with the specifications of the Progressive Machinery Corp. tool, and at that time Collins could leave Progressive Machinery Corp. or pick a fight as an excuse to leave and then it could not be said that he had disclosed the trade secret of the hinge tool because it would already be in operation."

Engleman also talked with Desrosier, a tool maker employed by the corporation, who was in charge of the operation of the hinge tool and offered to pay him well if he "would take the blueprints of the hinge tool from Progressive . . . and make them available to Engleman." This was the last overt act by any of the conspirators as immediately after this conversation Engleman was arrested.

Each defendant excepted to the denial of his motion for a directed verdict of "Not Guilty" presented at the conclusion of the evidence, and each was found guilty.

A criminal conspiracy is generally understood to be "a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Commonwealth* v. *Hunt*, 4 Met. 111, 123. In the present case the indictment charges that the three defendants conspired to "steal certain trade secrets, confidential methods, and tools" of the corporation. The word "steal" as so used has, under the definitions of "stealing" in G. L. (Ter. Ed.) c. 277, § 39, become a term of art and includes the criminal taking of personal property with intent to deprive the owner permanently of the use of it. *Commonwealth* v. *Kozlowsky*, 238 Mass. 379, 383. See *Commonwealth* v. *Farmer*, 218 Mass.

507, 509. Articles of personal property which may be the subject of larceny, other than those which were so held at common law (see *Commonwealth* v. *Cabot*, 241 Mass. 131, 140–141), are described in G. L. (Ter. Ed.) c. 266, § 30 (2), as appearing in St. 1945, c. 282, § 2. Among them are listed "a deed or writing containing a conveyance of land, any valuable contract in force, a receipt, release or defeasance, a writ, process, certificate of title . . . ." All are writings, referred to according to their legal character. It is contended by the Commonwealth that the word "process" is sufficiently broad to include "trade secrets"; but the term must be interpreted in its context and it is manifest that it is used in the sense of a paper or writing issued by some court in the exercise of its jurisdiction. As such secrets and methods are not the subject of larceny, that part of the indictment which charges a conspiracy to steal them states no offence and must be disregarded. Respecting the remaining allegation of conspiring to steal tools belonging to the corporation, there was no evidence that the three defendants or any two of them so conspired. Doubtless it could be found from Engleman's talks that he would have been willing to obtain by theft anything material to the manufacture of the hinge tool but it did not appear that either of the Des Vergnes agreed to arrange for or to participate in a larceny. Their activities were limited to obtaining information for Engleman and to promising assistance in manufacturing the tool.

The motions of the respective defendants for the direction of verdicts of not guilty should have been allowed.

*Exceptions sustained.*
*Judgments for the defendants.*