## COMMONWEALTH vs. JAMES O. MILLS.

No. 99-P-652.

Suffolk. January 4, 2001. - April 19, 2001.

Present: ARMSTRONG, C.J., PERRETTA, JACOBS, PORADA, & CYPHER, JJ.

Further appellate review granted. 434 Mass. 1104 (2001).

*Larceny. Embezzlement. Practice, Criminal,* Required finding, Sentence.

Discussion of the statutory crime of larceny set forth in G. L. c. 266, § 30. [370-371]

At a criminal trial, evidence that the defendant filed false earnings reports with a pension board did not constitute a trespassory taking of money; the allegation in the indictment charging the stealing of "a release of a claim to money" did not constitute an allegation of personal property under G. L. c. 266, § 30; further, no trust relationship was proved to support a theory that there was a fraudulent conversion: the defendant's motion for a required finding of not guilty should have been allowed. [371-374]

Where, on appeal, three of the defendant's five convictions of larceny were reversed, with judgment to enter for the defendant, the defendant's enhanced sentence as a "common and notorious thief," which requires three convictions, was vacated and the matter remanded for resentencing. [374-376]

INDICTMENTS found and returned in the Superior Court Department on June 19, 1996.

The cases were tried before *Thomas E. Connolly*, J.

*Robert L. Sheketoff* for the defendant.

*Cathryn A. Neaves*, Special Assistant Attorney General, for the Commonwealth.

CYPHER, J. A Superior Court jury found the defendant guilty of two counts of larceny by false pretenses, G. L. c. 266, § 30, from the Committee for Public Counsel Services (CPCS); three counts of larceny, G. L. c. 266, § 30, from the Boston Retirement Board (BRB); three counts of perjury, G. L. c. 268, § 1A; three counts of pension fraud, G. L. c. 32, § 18; two counts of procurement fraud, G. L. c. 266, § 67A; two counts of false claims, G. L. c. 266, § 67B; and four counts of failure to make

tax returns, G. L. c. 62C, § 73(*c*). After finding the defendant to be a "common and notorious thief" pursuant to G. L. 266, § 40, based on the five larceny convictions, the judge sentenced the defendant to serve no less than eighteen and no more than twenty years in prison with various concurrent sentences on the remaining charges.[1]

On appeal, the defendant argues that the trial judge erred in denying his motion for a required finding of not guilty as to the charges of larceny from the BRB; in adjudicating him a "common and notorious thief"; and in considering several inappropriate factors in sentencing. We conclude that the motion for a required finding as to larceny from the BRB should have been allowed. Because of the result we reach on these three larceny counts, we vacate as well the adjudication of the defendant as a "common and notorious thief" pursuant to G. L. c. 266, § 40, and therefore remand the matter to the Superior Court for resentencing.

*Factual background.* From 1993 through 1995, the defendant, a retired police officer, received numerous court appointments as a private investigator on behalf of Mills Investigations, Inc.[2] The defendant was the incorporator, treasurer, and one of the directors of the corporation, which he ran from his home in New Hampshire. The defendant's wife was recorded as

---

[1] General Laws c. 266, § 40, states: "Whoever, having been convicted, upon indictment, of larceny or of being accessory to larceny before the fact, afterward commits a larceny or is accessory thereto before the fact, and is convicted thereof upon indictment, and whoever is convicted at the same sitting of the court, as principal or accessory before the fact, of three distinct larcenies, shall be adjudged a common and notorious thief, and shall be punished by imprisonment in the state prison for not more than twenty years or in jail for not more than two and one half years."

[2] The appointments were made in the following manner. The defendant spent every business day at the Middlesex Superior Court, either in the courtroom of Clerk-Magistrate Joseph Marshall or in Marshall's office. Beginning in April, 1994, Marshall handled most appointments of counsel for indigent defendants and motions for investigative funds. Before that date, the task had been shared with four other clerks. Marshall usually appointed the same four attorneys, regardless of whether they were the designated bar advocate for the day. The four attorneys moved for investigation funds in every one of their cases and always retained the services of Mills Investigations, Inc. Marshall "rubber-stamped" the motions in his office, in the presence of the defendant, who typically spent three hours a day socializing with Marshall in his office.

president of the corporation but she never did any work related to the corporation and maintained a full-time job elsewhere. Most of the corporation's clients came from court appointments, and the defendant signed all of the bills for investigative services submitted to CPCS.

Evidence established that the defendant substantially overbilled CPCS from 1992 to July 1995 for work not performed[3] and that he withdrew significant amounts of money from the corporate account for his own personal use.[4]

*False earnings reports.* The defendant had retired in 1980 from the Boston police force because of disability (hypertensive heart disease) and thereafter received benefits of approximately $15,000 per year. Following receipt of pension benefits, every disability pensioner is required by statute to file a yearly earnings report, signed under the pains and penalties of perjury. See G. L. c. 32, § 91A. The BRB calculates an income limitation for each disability pensioner, and the pensioner must refund a dollar's worth of pension for each dollar of income over the income limitation. To collect money owed, the BRB sends bills to pensioners. If the pensioner does not send in the refund, the BRB withholds the amount due from the current pension payment.

The BRB had estimated that the defendant could earn between $30,000 and $32,000, approximately, during each of the years 1992 through 1994 before being required to refund any pension money. On earnings reports filed with the BRB, the defendant listed his employer as "Investigations, Inc." instead of Mills

---

[3]In fiscal year 1994, the defendant, through Mills Investigations, Inc., billed CPCS for $197,000, representing 5,483 hours of investigative services. Payments to an employee accounted for 1,383 hours, leaving the defendant responsible for 4,100 hours of work. On forty-four occasions, the defendant submitted bills with more than twenty-four hours of work attributed to a day. In fiscal year 1995, the defendant billed CPCS for $359,000, representing 10,059 hours of investigative services. Evidence at trial established that the other employees were paid for a total of 2,941 hours in fiscal year 1995. The remaining 8,118 hours meant that the defendant would have to have worked twenty-two and one-half hours every day for the entire fiscal year. The defendant submitted 211 bills for well over twenty-four hours of work in a day (with some as long as seventy-two hours).

[4]In 1994, the defendant withdrew $104,494 from the corporate account for personal use; in 1993 the total was $65,640; and in 1992, the total was $89,637.

Investigations, Inc.[5] In 1992, the year the defendant withdrew $89,637 from the corporate account of Mills Investigations, Inc., he reported to the BRB that he had earned a total of $25,000. In 1993, the year he withdrew $65,640, he reported that he had earned a total of $17,500. In 1994, the year he withdrew $104,494, he reported that he had earned $30,000. As a result of the defendant under-reporting his earnings, the BRB never sought a refund of any pension money.

At trial, the theory of defense was that the defendant merely worked very hard for Mills Investigations, Inc., a corporation "owned" by his wife (the sole stockholder), that the corporation did not intentionally over-bill CPCS, that the money used from the corporate account was for legitimate business expenses, and that he did not earn in excess of the minimum permitted by the BRB.

*The motion for required finding of not guilty.* The defendant argues that the trial judge erred in denying his motion for a required finding of not guilty with regard to the indictments charging larceny from the BRB because the Commonwealth tried the case on a theory of larceny "by stealing money or a release of money" and the evidence, viewed in the light most favorable to the Commonwealth, did not support a conviction for stealing on the theory presented to the jury. The Commonwealth contends that by arguing at trial that the defendant "stole" from the BRB, it was not limited to proving larceny, that stealing encompasses embezzlement, and that the instruction on larceny was sufficiently broad to include embezzlement. In response to the Commonwealth's argument on appeal that it proved embezzlement, the defendant contends that this amounts to a change of the theory of the case on appeal, that the theory was not submitted to the jury, and that the larceny instruction did not encompass embezzlement.

The defendant's motion for a required finding of not guilty was duly made and renewed. The motion was general in nature; therefore, if the evidence was sufficient on any theory properly presented to the jury, the motion was correctly denied. *Commonwealth* v. *Domanski*, 332 Mass. 66, 75-76 (1954). *Com-*

---

[5]The jury could have inferred that the defendant did this to avoid appearing self-employed, which might trigger an audit.

monwealth v. *Kalinowski,* 360 Mass. 682, 686 (1971). *Commonwealth* v. *Berry,* 431 Mass. 326, 330-331 (2000).

Review of a denial of a motion for a required finding of not guilty requires that we determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Jackson* v. *Virginia,* 443 U.S. 307, 318-319 (1979). *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979).

It is well-established that G. L. c. 266, § 30,[6] combined three common law theories of culpability for stealing (larceny, larceny by false pretenses, and embezzlement) into one statutory crime. *Commonwealth* v. *Kelly,* 24 Mass. App. Ct. 181, 183-184 (1987). *Commonwealth* v. *Nadal-Ginard,* 42 Mass. App. Ct. 1, 7 (1997). The purpose of the assimilation was to eliminate fatal variances in an indictment for stealing alleging one theory of culpability, where, at trial, the government proved stealing by a different theory of culpability. *Commonwealth* v. *Kelley,* 184 Mass. 320, 324 (1903). *Commonwealth* v. *King,* 202 Mass. 379, 387-393 (1903). *Commonwealth* v. *Nadal-Ginard,* 42 Mass. App. Ct. at 7. Proof of larceny, larceny by false pretenses, or embezzlement will establish a violation of G. L. c. 266, § 30, regardless of how the charging document describes the manner of theft. *Commonwealth* v. *Corcoran,* 348 Mass. 437, 440-442 (1965). *Commonwealth* v. *Nadal-Ginard,* 42 Mass. App. Ct. at 7.[7] Nevertheless, despite the assimilation of all three theories of culpability into one statutory crime, the constituent crimes

---

[6]General Laws c. 266, § 30(1), provides in pertinent part: "Whoever steals, or with intent to defraud obtains by a false pretence, or whoever unlawfully, and with intent to steal or embezzle, converts, or secretes with intent to convert, the property of another as defined in this section, whether such property is or is not in his possession at the time of such conversion or secreting, shall be guilty of larceny."

[7]Further, G. L. c. 277, § 41, provides: "In an indictment for criminal dealing with personal property with intent to steal, an allegation that the defendant stole said property shall be sufficient; and such indictment may be supported by proof that the defendant committed larceny of the property, or embezzled it, or obtained it by false pretences." Thus, "[t]he statute explicitly permits convictions to be supported by evidence that the defendant's theft was committed in any manner condemned by the law." *Commonwealth* v. *Nadal-Ginard,* 42 Mass. App. Ct. at 6. See *Commonwealth* v. *Corcoran,* 348 Mass. at 440-441.

survive. *Commonwealth* v. *Nadal-Ginard*, 42 Mass. App. Ct. at 5, n.6. Conviction under G. L. c. 266, § 30, must be based on proof of one or more of the elements of the former separate crimes.[8]

Had the evidence, viewed in the light most favorable to the Commonwealth, established the essential elements beyond a reasonable doubt of any one of the three theories of culpability for larceny, the motion for a required finding of not guilty would have been properly denied, provided that the theory was properly submitted to the jury. *Commonwealth* v. *Kenneally*, 10 Mass. App. Ct. 162, 176 (1980), *S.C.*, 383 Mass. 269, cert. denied, 454 U.S. 849 (1981). The indictment for larceny from the BRB contained three counts which alleged that on three different dates (April 4, 1993, April 15, 1994, and February 28, 1995) the defendant violated G. L. c. 266, § 30, by stealing "money or a release of a claim to money." The dates specified were the dates on which the defendant submitted his earnings reports to the BRB, as required by G. L. c. 32, § 91A. At trial, the Commonwealth simply argued to the jury that the defendant stole from the BRB by submitting the false earnings reports.

"To support a conviction of larceny under G. L. c. 266, § 30, the Commonwealth is required to prove the 'unlawful taking and carrying away of the personal property of another with the specific intent to deprive the person of the property permanently' " (footnote omitted). *Commonwealth* v. *Donovan*, 395 Mass. 20, 25-26 (1985), quoting from *Commonwealth* v. *Johnson*, 379 Mass. 177, 181 (1979). See Model Jury Instructions for Use in the District Court § 5.41 (1997). Filing false earnings reports did not constitute a trespassory taking of money, and the "release of the right to money" is not property

---

[8]The defendant's motion for a bill of particulars was allowed, but the Commonwealth never produced one. There is no indication in the record that the defendant sought enforcement of the order allowing the motion. A bill of particulars would have limited the Commonwealth's proof but not the theory of culpability, thus the absence of a response to the request for a bill of particulars does not change the outcome. *Commonwealth* v. *Kenneally*, 10 Mass. App. Ct. 162, 176 n.4 (1980), *S.C.*, 383 Mass. 269, cert. denied, 454 U.S. 849 (1981). See *Commonwealth* v. *Corcoran*, 348 Mass. at 442 (specifications in bill of particulars, in light of statute merging three offenses in one crime of larceny, would only limit the proof that could be offered).

within the meaning of the statute or the common law.[9] Although the word "release" specifically appears in the statute, it refers to a tangible writing. See *Commonwealth* v. *Engleman*, 336 Mass. 66, 69 (1957) (statutory language of "a deed or writing containing a conveyance of land, any valuable contract in force, a receipt, release or defeasance, a writ, process, certificate of title" refers to writings); *Commonwealth* v. *Yourawski*, 384 Mass. 386, 388 (1981) (definition of property in G. L. c. 266, § 30[2], is all inclusive).[10] There was no evidence of stealing a written release. Nor does the fact that the defendant avoided the creation of a debt to the BRB by filing a false report render the defendant culpable for larceny. See *Commonwealth* v. *Rivers*, 31 Mass. App. Ct. 669, 670 (1991) (money owed to town for use of landfill was not larceny). But see note 11, *infra*.

The Commonwealth argues that the motion for required finding of not guilty was, nevertheless, properly denied because the indictment, by using the word "steal," encompassed the crime of embezzlement. See *Commonwealth* v. *King*, 202 Mass. at 385 (the word "steal" is a term of art which includes the criminal taking or conversion by way of larceny, embezzlement, or false pretenses). According to the Commonwealth, the defendant was only "conditionally" entitled to the pension money because he received it upon the trust that he would refund it or a portion of it if his income exceeded a certain level. Therefore, the filing of the false earnings reports constituted a fraudulent conversion. See *Gibraltar Fin. Corp.* v.

---

[9]The judge erroneously instructed the jury that the "release of the right to money" was property. General Laws c. 266, § 30(2), defines property as "money, personal chattels, a bank note, bond, promissory note, bill of exchange or other bill, order or certificate, a book of accounts for or concerning money or goods due or to become due or to be delivered, a deed or writing containing a conveyance of land, any valuable contract in force, a receipt, release or defeasance, a writ, process, certificate of title or duplicate certificate issued under chapter one hundred and eighty-five, a public record, anything which is of the realty or is annexed thereto, a security deposit received pursuant to section fifteen B of chapter one hundred and eighty-six, electronically processed or stored data, either tangible or intangible, data while in transit, telecommunications services, and any domesticated animal, including dogs, or a beast or bird which is ordinarily kept in confinement."

[10]In response to *Engleman*, the Legislature amended G. L. c. 266, § 30, to cover real estate and trade secrets. *Commonwealth* v. *Rivers*, 31 Mass. App. Ct. 669, 671 n.3 (1991).

*Lumbermens Mut. Ins. Co.*, 400 Mass. 870, 873 (1987) (conversion requires interference with property to which another has a superior and immediate right of possession). See generally LaFave & Scott, Substantive Criminal Law § 8.6, at 379 (1986) (embezzlement means "fraudulently converts").

Assuming, without deciding, that the Commonwealth tried the case on a theory of embezzlement, the motion for required finding nevertheless should have been allowed.[11] Inherent in the crime of embezzlement is trust. *Commonwealth* v. *Hays*, 14 Gray 62, 63-65 (1859). See *Commonwealth* v. *Ryan*, 155 Mass. 523 (1892) (Holmes, J.) (embezzlement is the fraudulent conversion of property by one entrusted with its lawful possession); *Commonwealth* v. *Geane, ante* 149, 153 (2001) (no "conversion" where there was no special relationship between defendant and subcontractors). See generally Nolan & Henry, Criminal Law § 348, at 266 & n.5 (2d ed. 1988) (relationship of trust and confidence reposed in the defendant by the victim is a common thread in all embezzlement cases). To establish embezzlement the Commonwealth was required to prove:

"First: That the defendant, while in a position of trust or

---

[11]The defendant argues that the Commonwealth did not try the case on a theory of embezzlement. The record supports his claim. First, the words "embezzlement" or "fraudulent conversion" were never mentioned at any time in the proceedings by either counsel or the judge. The Commonwealth did not request an instruction on embezzlement and the judge did not instruct the jury on embezzlement. The absence of any discussion at any point in the record of the elements of embezzlement supports the defendant's claim that this theory is newly advanced on appeal. Therefore, even if the evidence were sufficient for any rational trier of fact to· find the essential elements of embezzlement beyond a reasonable doubt, reversal of the convictions for larceny from the BRB would still be required. See *Commonwealth* v. *Longo*, 23 Mass. App. Ct. 518, 527 (1987), rev'd on other grounds, 402 Mass. 482 (1988) (manifestly unjust and unlawful to uphold a verdict on a basis not in the minds of the contending parties, the judge, or the jury). See also *Dunn* v. *United States*, 442 U.S. 100, 106 (1979); *Cola* v. *Reardon*, 787 F.2d 681, 692-693 (1st Cir.), cert. denied, 479 U.S. 930 (1986).

We do not consider whether a theory of larceny by false pretenses would have fit the evidence because the case with regard to the defendant's actions against the BRB was not tried on that theory and neither party has argued for it on appeal. We note that double jeopardy principles would, in any event, bar retrial on a theory of larceny by false pretenses. See *Sanabria* v. *United States*, 437 U.S. 54, 64 (1978). Compare *Green* v. *United States*, 355 U.S. 184, 190 (1957).

confidence, was entrusted with possession of personal property belonging to another person;

"Second: That the defendant took that property, or hid it, or converted it to his (her) own use, without the consent of the owner; and

"Third: That the defendant did so with the intent to deprive the owner of the property permanently."

Model Jury Instructions for the District Court § 5.415 (1997).

No evidence was presented to the jury to support a conclusion that the defendant was in a position of trust or confidence with the BRB, or that his receipt of pension money was "conditional" on truthful earnings reports being filed and that that money belonged to the BRB until then. Furthermore, as with larceny, a mere debtor-creditor relationship does not permit a finding of embezzlement. See *Commonwealth* v. *Hutchins*, 232 Mass. 285, 290-292 (1919); *Commonwealth* v. *Anthony*, 306 Mass. 470, 476-477 (1940); *Mickelson* v. *Barnet*, 390 Mass. 786, 790 (1984); *Commonwealth* v. *Moreton*, 48 Mass. App. Ct. 215, 221-222 (1999) (Brown, J., dissenting); *Commonwealth* v. *Geane, supra* at 153. The motion for a required finding of not guilty as to the charges of larceny from the BRB should have been allowed.

*Claim of improper sentencing.* We reverse the defendant's three convictions for larceny from the BRB, leaving in place the two convictions for larceny from CPCS. Three convictions, however, are required in order to sentence a person as a "common and notorious thief." See note 1, *supra.* Because the other sentences were ordered to run concurrently with the "common and notorious thief" sentence, we remand the matter to Superior Court for resentencing on the remaining convictions. We think it appropriate, in the circumstances of this case, to take the unusual step of ordering that resentencing take place before a different judge.[12] *Commonwealth* v. *Coleman*, 390 Mass. 797,

---

[12]The record of the sentencing hearing contained numerous comments by the judge which strongly suggest that the judge's personal feelings interfered with his sentencing decision. For example, the judge alluded to the "back room" approval by Marshall of the motions for funds, and the "aspect of

810-811 n.15 (1984). See *Commonwealth* v. *White*, 48 Mass. App. Ct. 658, 664 (2000).

The judgment is reversed as to the indictment alleging three counts of larceny from the BRB, the verdicts on those counts are set aside, and judgment is to be entered for the defendant on those counts. The adjudication of the defendant as a common and notorious thief is reversed and the sentence under G. L. c. 266, § 40, is vacated. The case is remanded to the Superior Court for resentencing by a different judge on the remaining indictments, all of which were to run concurrently with the

public corruption, the involvement of that clerk magistrate, and what the effect of that is in the sentencing here on the public perception of when somebody is adjudicated guilty as to what the Court is going to do about it." There were no charges on account of Marshall's conduct before the court. See *Commonwealth* v. *Souza*, 390 Mass. 813, 817 (1984) (judge may not punish for untried offense).

The judge also commented on the failure of the defendant to admit any wrongdoing and compared it to his childhood experience with priests listening to confession in church. The judge returned to the issue of public perception of "the process" but again reiterated the theme of the defendant's failure to say, "I'm sorry," before stating that he would adopt the Commonwealth's recommendation of eighteen to twenty years. It should go without saying that a judge should not make references to his own personal religious views.

Defense counsel objected to the judge's reliance on the defendant's failure to admit wrongdoing, and the judge indicated that he would "strike" that reason but that the other reasons were sufficient to justify the eighteen to twenty-year sentence.

Notwithstanding the judge's statement that he would withdraw from his consideration the defendant's failure to confess and apologize, and the judge's consideration of other appropriate factors, the remarks created the appearance that the judge's sentencing decision may have been influenced by a desire to punish on the basis of untried conduct or the exercise of a constitutional right. Although willingness to admit guilt may be a proper factor justifying more lenient sentencing, *Commonwealth* v. *Johnson*, 27 Mass. App. Ct. 746, 751 (1989), punishing a defendant for exercising a constitutional right is not a proper exercise of sentencing discretion. *Commonwealth* v. *Murray*, 4 Mass. App. Ct. 493, 497 (1976) (increasing a sentence because of the defendant's failure to confess burdens a defendant's rights against compelled self-incrimination). See *Estelle* v. *Smith*, 451 U.S. 454, 462 (1981) (rejecting proposition that incrimination is complete once guilt is adjudicated); *Mitchell* v. *United States*, 526 U.S. 314, 321 (1999) (privilege of silence retained at sentencing).

As this court has observed, with regard to a different sort of inappropriate sentencing comment, "[w]hatever his personal and private beliefs may be, a judge cannot permit them to transform the judicial role from [that of] impartial arbiter." *Commonwealth* v. *White*, 48 Mass. App. Ct. 658, 664 (2000).

sentence as a common and notorious thief: namely, two counts of larceny by false pretenses from CPCS, three counts of perjury, three counts of pension fraud, two counts of false claims, and four counts of failure to make tax returns.

*So ordered.*