COMMONWEALTH *vs.* PAUL R. CACCHIOTTI.

No. 99-P-1006.

Middlesex. January 9, 2001. - July 24, 2002.

Present: PERRETTA, KAPLAN, & BECK, JJ.

*Extortion. Larceny. Evidence,* Relevancy and materiality, Threat. *Practice, Criminal,* Required finding.

At the trial of indictments charging extortion and larceny, the judge, acting within the broad range of his discretion, did not err in excluding, as irrelevant, the testimony of a witness proffered by the defendant. [502]

At the trial of an indictment charging an attorney with extortion from his client, the evidence was sufficient for the jury to conclude that the defendant, by asking for and accepting a fee for seeking a bail reduction for his client, used his power and authority as appointed counsel to extort money for seeking his client's freedom, a task his appointment itself required him to perform. [502-504]

INDICTMENTS found and returned in the Superior Court Department on March 20, 1997.

The cases were tried before *Thayer Fremont-Smith,* J.

*Robert J. Wheeler, Jr.,* for the defendant.

*Annette C. Benedetto,* Assistant Attorney General, for the Commonwealth.

PERRETTA, J. On indictments charging the defendant with the attempted extortion of Nicholas Urena and larceny from the Commonwealth of property exceeding the value of $250, the Commonwealth presented evidence to show that the defendant sought and received money from both Urena and the Committee for Public Counsel Services (CPCS) for legal services rendered on matters for which he had been appointed to represent Urena. On appeal from his convictions on those indictments, the defendant argues that the Superior Court judge erred in excluding evidence on grounds of relevance and in concluding that the Commonwealth's evidence was sufficient to

withstand a motion for a required finding of not guilty on the indictment brought under G. L. c. 265, § 25.[1] We affirm the judgments.

1. *The evidence.* At Urena's arraignment on indictments charging him with drug trafficking in Cambridge and Somerville, the court ordered cash bail in the amount of $60,000, and appointed the defendant as counsel. Urena, who knew that the Commonwealth would pay his legal fees, twice told the defendant that he wanted the amount of his bail lowered. The defendant agreed to seek a bail reduction in exchange for $3,000.[2] Urena then arranged, through his "mother" (in fact his aunt who had raised him), his girlfriend, and the girlfriend's sister, for the delivery of $1,500 to the defendant, the remainder to be paid as the case proceeded. He instructed the women that they were to make certain that the defendant gave them a receipt for the payment.

On April 8, 1993, Urena's girlfriend and her sister went to the defendant's office. The sister knew that the defendant had been appointed by the court to represent Urena, but, in response to her questions concerning the need for payment of his fees, the defendant informed the women that he was going to act as Urena's privately retained counsel and that he needed money to proceed on the case. He informed the women that although Urena was facing a sentence of ten years imprisonment, his goal was to attempt to obtain a sentence of no more than five years and to have Urena's bail reduced. There was also conversation concerning a case against Urena for the sale of drugs in Charlestown on September 12, 1992. However, Urena's girlfriend, who was with Urena at the time of that alleged sale, informed the defendant that the Charlestown case had been closed. The women gave the defendant $1,000, and the defendant gave them a receipt. About six months later, on June 18, 1993, Urena's girlfriend, mother, and cousin's wife went to the defendant's office. The girlfriend gave the defendant $500,

---

[1]The defendant makes no particular argument in respect to his larceny conviction. We attribute his silence to the logical assumption that, in the circumstances of this case, there could be no larceny from the Commonwealth unless the defendant also extorted money from Urena.

[2]The record is silent on the irrelevant question of whether the defendant ever in fact sought a reduction of Urena's bail.

and he gave Urena's mother a receipt. Both receipts were received in evidence.

Sometime in 1995, Urena filed a complaint with the Board of Bar Overseers (BBO). In the course of the BBO's investigation, the defendant told the BBO attorney (bar counsel) that he had no memory of receiving $1,500 from Urena and denied any misconduct. When shown a copy of his receipt for $500, the defendant denied his signature. Upon being shown a copy of his receipt for $1,000, the defendant acknowledged receiving the money and explained that it was payment for his representation of Urena in the Charlestown case. He explained to bar counsel that he had been retained to conduct a "discreet inquiry" into that matter.

Urena denied having retained or paid the defendant to represent him on the Charlestown matter, and a bar advocate testified that he had represented Urena in the Charlestown District Court on the drug distribution charge. Moreover, the defendant had no file pertaining to Urena's case in Charlestown. He did, however, have files on Urena's indictments arising out of the charges of drug trafficking in Cambridge and Somerville. One of those files contained a notation reading, "10 grams . . . Charlestown September '90, 21," as well as a probation report making reference to the Charlestown complaint. The report had been obtained in 1995, about three weeks before the defendant's scheduled meeting with bar counsel and two years after he had ceased to represent Urena. Additionally, the defendant's receipt book contained a carbon copy of the receipt he had given Urena's mother for her payment of $500.

There was also evidence to show that the defendant submitted four bills to CPCS for services rendered to Urena. On each of those bills, he certified that he had not received any money from any person in connection with his representation. As a result of these bills, the defendant received State funds in the amount of $2,300.

At the close of the Commonwealth's case and consistent with his theory of defense, that the monies he had received from Urena pertained to the charge pending in the Charlestown District Court and not the indictments charging him with drug trafficking in Cambridge and Somerville, the defendant sought

to call a former assistant district attorney (ADA). According to the defendant's offer of proof, the ADA would have testified that he and the defendant had a conversation in which they were "gearing up to try to reach some kind of global plea" by Urena to all the criminal charges. The judge ruled that the proffered testimony of the ADA was irrelevant and sustained the Commonwealth's objection.

2. *The relevancy claim.* It is the defendant's position that the ADA's testimony was relevant to his defense that he represented Urena on the Charlestown charge. "In order to be considered relevant, 'the evidence must have rendered the desired inference more probable than it would have been without it.' *Commonwealth* v. *Copeland,* 375 Mass. 438, 443 (1978). *Green* v. *Richmond,* 369 Mass. 47, 59 (1975)." *Commonwealth* v. *Fayerweather,* 406 Mass. 78, 83 (1989). See *Commonwealth* v. *Tobin,* 392 Mass. 604, 613 (1984) ("[e]vidence need not establish directly the proposition sought; it must only provide a link in the chain of proof").

Boiled down, the question before us is whether the trial judge abused his discretion in excluding the ADA's testimony. See *Commonwealth* v. *Chasson,* 383 Mass. 183, 187 (1981), and cases therein cited. The judge reasoned that because the ADA's testimony would show, at most, the undisputed fact that the defendant knew about the case pending against Urena in the Charlestown District Court, it was irrelevant to the contested issue whether Urena had authorized or paid the defendant to represent him on that charge. We conclude that the judge, acting within the broad range of his discretion, could have ruled either way. Consequently, we have no reason for disturbing the defendant's convictions on the basis of this claim. See *Commonwealth* v. *Doherty,* 353 Mass. 197, 213-214 (1967), cert. denied, 390 U.S. 982 (1968); *Commonwealth* v. *Gonzalez,* 22 Mass. App. Ct. 274, 281 (1986).

3. *The sufficiency of the evidence.* As here relevant, G. L. c. 265, § 25, as amended by St. 1953, c. 294, reads: "Whoever . . . maliciously threatens an injury to the person or property of another . . . or . . . maliciously and unlawfully uses or threatens to use against another the power or authority vested in him, with intent thereby to extort money or any pecuniary

advantage . . . shall be punished . . . ." See Model Penal Code § 223.4(4) (1980).[3] The defendant argues that although the Commonwealth's evidence could be deemed sufficient to show that he had discussion with Urena concerning payment of a fee to which he was not entitled, there was nothing in his conversations with Urena that reasonably could be found to constitute a threat.[4]

As most recently explained in *Commonwealth v. Gittens, ante* 148, 154 (2002):

> "In analyzing whether a threat is made, we do not parse the words alone, *Commonwealth v. Sholley,* [432 Mass. 721, 725 (2000), cert. denied, 532 U.S. 980 (2001)], nor do we draw distinctions between express and implied threats. Rather, we 'consider the context in which the allegedly threatening statement was made and all of the surrounding circumstances' to determine whether the statement was a threat. *Ibid.* Demeanor and tone play a part, as does the personal history of the speaker, the relationship of the parties, and the timing, subject matter, location, and other conditions of the exchange."

See Model Penal Code § 223.4 comment 2(a), at 205-206.[5]

Although Urena's state of mind is not relevant to the question of the defendant's guilt or lack thereof, see *Commonwealth v. Corcoran,* 252 Mass. 465, 483 (1925), the Commonwealth presented evidence to show that Urena knew that he was not responsible for the legal fees incurred for his representation on

---

[3]Section 223.4(4) provides: "A person is guilty of theft if he purposely obtains property of another by threatening to . . . (4) take or withhold action as an official, or cause an official to take or withhold action."

[4]The defendant makes no argument about whether any threat found to have been made was also shown to be malicious. See, e.g., *Commonwealth v. Lamothe,* 343 Mass. 417, 420 (1961).

[5]That comment reads: "It should be clear that the threat need not be express. The language of Section 223.4 is intended to cover implicit as well as explicit extortionate threats. It is sufficient, for example, that the actor ask for money in exchange for 'protection' from harms where the actor intends to convey the impression that he will in some fashion instigate the harm from which he proposes to 'protect' the victim. The threat may also be implicit from the situation, as where a policeman who has announced his intention to effect an arrest asks for money and releases the suspect from custody on receiving it. The section also covers oral as well as written threats, as did prevailing law."

the indictments charging him with drug offenses in Cambridge and Somerville; that his bail on those indictments was set at $60,000; that Urena, while being held until bail could be posted, twice asked the defendant to seek a reduction of his bail; that the defendant agreed to seek a bail reduction in exchange for a payment in the amount of $3,000; that Urena, through family and friends, paid the defendant $1,500; and that Urena, throughout the time period relevant to the issues before us, had another court-appointed attorney acting on his behalf on the complaint pending in the Charlestown District Court. There was also evidence to show that the defendant knew that he was not entitled to any payment from Urena for legal services rendered on the Cambridge and Somerville indictments.

Applying *Gittens, supra,* and the cases therein cited, to the evidence taken in the light most favorable to the Commonwealth, we conclude that there was evidence from which the jury could have concluded that the defendant accepted $1,500 in return for seeking a bail reduction and that, by seeking and accepting a fee for so doing, he used his power and authority as appointed counsel to extort money for seeking his client's freedom, a task his appointment itself required him to perform. Denial of the motion for a required finding was, therefore, correct.

*Judgments affirmed.*