COMMONWEALTH *vs.* JOHN B. MILLEY.

No. 05-P-1046.

Middlesex. May 15, 2006. - November 2, 2006.

Present: RAPOZA, C.J., BECK, & CYPHER, JJ.[1]

*Attorney at Law,* Conflict of interest.

A criminal defendant seeking a new trial failed to demonstrate that his trial counsel performed under a genuine conflict of interest that arose from a pattern of his appointments to cases in the Superior Court [687-691], or that any potential conflict existed that materially prejudiced his defense [691-692].

INDICTMENTS found and returned in the Superior Court Department on August 15, 1991.

A motion for a new trial, filed on April 25, 2000, was heard by *Raymond J. Brassard,* J.

*Lori A. Benavides,* Assistant District Attorney, for the Commonwealth.

*Kevin S. Nixon* for the defendant.

CYPHER, J. This case presents the unusual allegation that the defendant's trial counsel performed under a genuine conflict of interest that arose from a pattern of his appointments to cases in the Superior Court, as described in *Commonwealth* v. *Mills,* 51 Mass. App. Ct. 366, 367 n.2 (2001), *S.C.,* 436 Mass. 387 (2002). The defendant asserts that his counsel had a financial interest in continuing to be appointed to cases, and that that interest conflicted with his duty to represent the defendant. Acting on a motion for a new trial, a Superior Court judge concluded that the defendant established that his counsel had a genuine conflict of interest, and allowed the defendant's motion. The case now is before us on the Commonwealth's appeal.

---

[1] Justice Beck participated in the deliberation of this case before her retirement.

*Procedural background.* A Superior Court jury convicted the defendant of two counts of rape in 1993.[2] We affirmed those convictions in an unpublished memorandum and order, *Commonwealth* v. *Milley*, 38 Mass. App. Ct. 1108 (1995), and we affirmed the denial of a motion for a new trial, filed in 1997, in another unpublished memorandum and order, *Commonwealth* v. *Milley*, 46 Mass. App. Ct. 1110 (1999).

The defendant, acting pro se, filed a second motion for a new trial in 2000, raising issues of conflict of interest of trial counsel and inadequate investigation by trial counsel and an investigator retained by trial counsel. That motion was denied, and the defendant appealed. Concluding that the defendant raised a substantial issue concerning the alleged conflict of interest of trial counsel, we vacated the denial of his motion for a new trial and remanded for an evidentiary hearing. *Commonwealth* v. *Milley*, 55 Mass. App. Ct. 1106 (2002).

Following the remand, an evidentiary hearing was held, and the motion judge, concluding that the defendant had established that his trial counsel had both a genuine and potential conflict of interest, allowed the defendant's motion for a new trial.

*Background of the alleged conflict of interest.* After his convictions had been affirmed on appeal, the defendant discovered through newspaper articles what he asserts was a "scheme" involving the appointment of four attorneys to cases in the Superior Court in Middlesex County, who would then hire the same investigator, James O. Mills.

This pattern of court appointments and subsequent retention of Mills as investigator was outlined in *Commonwealth* v. *Mills*, 51 Mass. App. Ct. at 367 n.2, as follows: Clerk-Magistrate Joseph Marshall "handled most appointments of counsel for indigent defendants and motions for investigative funds. . . . Marshall usually appointed the same four attorneys, regardless of whether they were the designated bar advocate for the day. The four attorneys moved for investigation funds in every one

[2]Charged with three counts of aggravated rape, the defendant was found not guilty on one count, and guilty on two counts of the lesser included charge of rape. He was found not guilty on charges of breaking and entering with intent to commit a felony, and of assault and battery by means of a dangerous weapon.

of their cases and always retained the services of Mills Investigations, Inc. Marshall 'rubber-stamped' the motions in his office, in the presence of [Mills], who typically spent three hours a day socializing with Marshall in his office." Based on evidence that Mills "substantially overbilled [Committee for Public Counsel Services (CPCS)] from 1992 to July 1995 for work not performed," Mills was convicted of two counts of larceny by false pretenses from CPCS. *Id.* at 368.[3]

In our unpublished memorandum and order reviewing the defendant's second motion for a new trial, the defendant identified his trial counsel, Paul R. Cacchiotti, as one of the four attorneys whose appointments were described, but who were not identified by name, in *Commonwealth* v. *Mills.* The defendant stated in an affidavit that Cacchiotti acted under a genuine conflict of interest because his "personal interests in being assigned cases . . . in exchange for obtaining funds to pay private investigator Mills, who Cacchiotti knew was not conducting proper investigations, conflicted with [the defendant's] interests in having [his] case fully investigated by counsel prior to trial." We noted that the defendant's assertions of matters that were inadequately investigated, or not investigated at all, were "sufficient to justify an evidentiary hearing to determine whether those alleged failures can be linked to the defendant's assertion of a conflict of interest of his trial counsel (as distinct from mere ineffectiveness not predicated on a genuine conflict)."

*Discussion.* We review the disposition of a motion for a new trial "to determine whether there has been a significant error of law or other abuse of discretion. . . . When, as here, the motion judge did not preside at trial, we defer to that judge's assessment of the credibility of witnesses at the hearing on the new trial motion, but we regard ourselves in as good a position as the motion judge to assess the trial record." *Commonwealth* v. *Grace,* 397 Mass. 303, 307 (1986).

a. *The alleged genuine conflict of interest.* "An 'actual' or 'genuine' conflict of interest arises where the 'independent professional judgment' of trial counsel is impaired . . . by his own interests . . . ." *Commonwealth* v. *Shraiar,* 397 Mass. 16,

---

[3]Mills was convicted of several other charges not related to CPCS.

20 (1986). See *Commonwealth* v. *Patterson*, 432 Mass. 767, 774-775 (2000), and cases cited.

The standard for reviewing conflict of interest claims under art. 12 of the Massachusetts Declaration of Rights is more rigorous than the standard elaborated in *Cuyler* v. *Sullivan*, 446 U.S. 335 (1980), for conflict of interest claims under the Sixth Amendment to the United States Constitution. See *Commonwealth* v. *Fogarty*, 419 Mass. 456, 459 (1995). "If a defendant demonstrates an actual conflict of interest, art. 12 does not require the defendant to show that the conflict resulted in actual prejudice or that it had an adverse effect on his counsel's performance." *Ibid.* "Where a genuine conflict of interest exists, the defendant's conviction must be reversed." *Commonwealth* v. *Shraiar*, 397 Mass. at 20.

It is the defendant's burden "to show demonstrative proof detailing the precise character of the alleged conflict of interest." *Commonwealth* v. *Davis*, 376 Mass. 777, 781 (1978). "The defendant bears the burden of proving that a genuine conflict of interest existed, and must do so without relying on mere conjecture or speculation." *Commonwealth* v. *Burbank*, 27 Mass. App. Ct. 97, 103 (1989).

The defendant went to some length at the evidentiary hearing to attempt to show the nature of what he alleges was Cacchiotti's conflicting financial interest. In the end, however, we are left only with the defendant's view that it was a financial interest in continuing to be appointed to cases and speculation that Cacchiotti had an incentive to hire Mills, regardless of Mills's work product.

To be sure, certain conduct of Marshall and Mills was culpable. The motion judge found that Marshall was indicted and pleaded guilty to six counts of soliciting, receiving illegal gifts, and filing false reports to the Commonwealth. Mills was convicted of two counts of larceny by false pretenses from CPCS. See *Commonwealth* v. *Mills*, 436 Mass. at 388. However, the motion judge noted that none of the attorneys involved in the appointments by Marshall was indicted or convicted.[4]

There is no indication that Cacchiotti's acceptance of ap-

---

[4]Cacchiotti was convicted of extortion in an unrelated case. *Commonwealth* v. *Cacchiotti*, 55 Mass. App. Ct. 499 (2002).

pointment to the defendant's case involved any impropriety on his part, nor is there any indication that there was any irregularity in the payment of his compensation by CPCS. We conclude that Cacchiotti had a financial interest in accepting appointment to the defendant's case, with the expectation that he would be compensated for his services by CPCS, but there is nothing to show that the tainted conduct of Marshall and Mills was in conflict with Cacchiotti's duty to represent the defendant.

As the motion judge correctly noted, it is rare for a claim of conflict of interest to be based on an attorney's financial interest.[5] However, the judge relied on *Commonwealth* v. *Hodge*, 386 Mass. 165 (1982), to develop his conclusion that Cacchiotti had a genuine conflict of interest. We think that such an interpretation of *Hodge* was an error of law. A genuine conflict of interest arose in *Hodge* because a client of the partner of the defendant's attorney was a witness for the prosecution. See *id.* at 167-168. Ordinarily, that is enough to conclude a genuine conflict of interest exists, because the attorney's loyalty to the defendant conflicts with his loyalty to his law partner. See generally *Commonwealth* v. *Soffen*, 377 Mass. 433, 439-440 (1979). The *Hodge* court described the conflict as based on the attorney's "financial interest in not antagonizing his firm's client by a vigorous cross-examination." *Commonwealth* v. *Hodge*, 386 Mass. at 168. Relying on the *Hodge* court's description of the conflict in that case, the motion judge concluded that the defendant in *Hodge* had "successfully proven a conflict of interest claim predicated on the attorney's financial interest." The motion judge summed up by stating that Cacchiotti had a "financial interest in choosing Mills as his investigator, regardless of whether Mills would conduct an adequate investigation."

It is fundamental that a "lawyer may not represent a client if there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's financial or other personal interests." Restatement (Third) of the Law Governing Lawyers § 125 (2000). "Client interests include all those that a reasonable lawyer, unaffected

[5]See the cases collected at Annot., Circumstances Giving Rise to Prejudicial Conflict of Interests Between Criminal Defendant and Defense Counsel — State Cases, 18 A.L.R.4th 360, 498-500 (1982 & Supp. 2006).

by a conflicting personal interest, would protect or advance. Perhaps the clearest case of a conflict is where the lawyer has a significant adverse financial interest in the object of the representation." *Id.* at § 125 comment c. Compare cases cited in *Commonwealth* v. *Leslie*, 376 Mass. 647, 653 & n.12 (1978), cert. denied, 441 U.S. 910 (1979) (conflict of interest exists where a lawyer "has a business reason for preferring a verdict unfavorable to the defendant he represents"). Compare also *Commonwealth* v. *Shraiar*, 397 Mass. at 19 (defense counsel had a "personal involvement in the subject matter of the criminal prosecution").

There is no foundation for the defendant's claim that Cacchiotti had a financial conflict of interest in hiring Mills to investigate the defendant's case because Cacchiotti wanted to ensure that he would continue to receive court appointments. The evidence indicates that the illegal manipulation of the court appointment system by Mills and Marshall did not begin until April, 1994. See *Commonwealth* v. *Mills*, 51 Mass. App. Ct. at 367 n.2. Cacchiotti was appointed as the defendant's counsel on September 6, 1991, and the trial concluded on May 10, 1993. There is thus no evidence that the underlying scheme was in operation or that there were any financial incentives to Cacchiotti during the time he represented the defendant. Compare *Commonwealth* v. *Hodge*, 386 Mass. at 167 (conflict of interest where the defendant's attorney's partner represented a witness for the prosecution "before, during, and after" the defendant's attorney represented the defendant); *Commonwealth* v. *Burbank*, 27 Mass. App. Ct. at 103-104 (counsel had no interest adverse to the defendant and there was no genuine conflict of interest where the defendant asserted that his counsel had a financial interest and incentive to remain in the case and retain funds he had been paid); *People* v. *Kirkpatrick*, 7 Cal. 4th 988, 1009 (1994), cert. denied, 514 U.S. 1015 (1995) (no conflict of interest shown in the financial stake of a court-appointed counsel who opposed the defendant's motion for self-representation); *State* v. *Coney*, 845 So. 2d 120, 133-134 (Fla. 2003) (public defender appointed under a kickback scheme not shown to have a conflict of interest between his self-interest in continuing to receive appointments and the duty to represent his client).

We conclude that the defendant failed to meet his burden of showing that Cacchiotti had a genuine conflict of interest. The defendant is therefore not entitled to a new trial on that ground.

b. *The alleged potential conflict of interest.* Although there has been no showing of an actual conflict of interest, the defendant yet may prevail "if he demonstrates a potential conflict which materially prejudiced his defense." *Commonwealth* v. *Shraiar*, 397 Mass. at 24. Regardless of whether a potential conflict existed, the defendant has failed to show any prejudice. The defendant's attempt to show he was materially prejudiced by inadequate investigation of his case by Mills and Cacchiotti is merely an assertion of ineffectiveness of counsel. "Actual prejudice is measured against the standard in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), as in cases involving claims of ineffective assistance of counsel." *Commonwealth* v. *Croken*, 432 Mass. 266, 272 (2000). We remanded this case for an evidentiary hearing for the determination whether trial counsel had a genuine conflict of interest as "distinct from mere ineffectiveness not predicated on a genuine conflict." Nevertheless, we consider the claim of ineffective assistance of counsel.

In particular, the defendant asserts that he was deprived of a substantial ground of defense, see *Commonwealth* v. *Saferian*, 366 Mass. at 96, because several witnesses, one of whom testified at trial, and the victim were not interviewed. Cacchiotti testified that he and Mills were not successful in obtaining interviews with the witnesses or the victim.[6]

Aside from vague hints that there might have been evidence reinforcing his defense of consent if there were testimony showing that he and the victim had a cordial relationship before the rape, or that the victim may have claimed rape because she then currently had a boyfriend, the defendant principally complains that the witness who testified, another tenant in the victim's apartment building, should have been impeached more vigorously as to the time she heard a call for help. He asserts that

[6]There is no evidence that the bills submitted by Mills to CPCS in this case were among those for which Mills was convicted of overbilling CPCS in *Commonwealth* v. *Mills*, 51 Mass. App. Ct. 366, or that Cacchiotti was involved in approving their payment.

further investigation would have been of value in challenging the time the incident occurred, and would have reinforced the evidence that the witness could not identify him to the police at the scene as the person she saw running down the second-floor stairs. Given the defense of consent, issues of the time of the incident and identity were unimportant, because if the parties engaged in consensual sexual intercourse, the defendant's presence at the scene is implicit. "The contention that counsel failed to investigate is nothing more than an ipse dixit." *Commonwealth* v. *Wheeler*, 52 Mass. App. Ct. 631, 641 (2001).

The defendant fails to show anything that would constitute "an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. at 96. Compare *Commonwealth* v. *Walter*, 396 Mass. 549, 555-559 (1986). In any event, the defendant was found not guilty on one count of aggravated rape, convicted on two counts of the lesser included charges of rape, and not guilty on two other charges. See note 2, *supra*. He fails to show "that better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977).

*Order allowing motion for new
trial reversed.*